Arjun Bakshi
4671 Ranchgrove Drive
Irvine, CA 92604
Tel: (310) 770-3318
Email: oobakshi@gmail.com



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN BAKSHI, | CASE NO: 8:22-cv-02170-CJC-DFM |
| PLAINTIFF, | EEOC CASE NO: 570-2022-00827X |
| VS. | |
| GINA RAIMONDO, SECRETARY U.S. DEPARTMENT OF COMMERCE, and JOHN DOES 1-10, INCLUSIVE, | |
| DEFENDANTS. | |

### AMENDED COMPLAINT AT LAW AND IN EQUITY

AND NOW, comes the Plaintiff, Arjun Bakshi, by and through himself, *pro se*, to file the instant complaint and in support thereof avers as follows:

1. The Plaintiff hereby initiates the instant complaint against the Defendants by way of wrongful termination of employment, violation of whistleblower protections, and other relevant torts and claims pertaining to the Plaintiff's time of employment with the U.S. Department of Commerce, International Trade Administration which ultimately resulted in termination without justification.

### I. JURISDICTION

2. This is a civil action authorized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for exercising rights under the same, 29 U.S.C. § 206 establishing

jurisdiction in violations of fair labor standards as well as 29 U.S.C. § 623 which prohibits discrimination against individuals in addition to state and federal law pertaining to wrongful termination of employment in addition to hostile work environment and retaliation.

## II. VENUE

3. Venue is proper as the Plaintiff resides within the instant district and the acts complained of have taken place mostly or entirely within the instant district. In addition, the Defendant(s) regularly transact within the instant district.

## III. PARTIES

4. The Plaintiff's name is Arjun Bakshi. At all relevant times in the instant matter, Plaintiff resides within the Central District of California at 4671 Ranchgrove Drive, Irvine, CA 92604..

5. Defendant Gina Raimondo, Secretary of the U.S. Department of Commerce at all times relevant in the instant matter serves at the address of 1401 Constitution Avenue, NW Washington D.C. 20230.

6. Defendants John Does 1-10, Inclusive, at all times relevant in the instant matter serves at the address of 1401 Constitution Avenue, NW Washington D.C. 20230.

7. Plaintiff does not know the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Upon information and belief, these individuals comprise the managers of personnel of the company specifically responsible for the matters complained of herein. Plaintiff does not currently know the true names and capacities of those involved in the matters giving rise to the complaint, but Plaintiff will amend his complaint to add the true names and identities as this information becomes available throughout the process of discovery.

COMPLAINT

## STATEMENT OF FACT

8. Ever since Plaintiff's Internship with the U.S. Department of Commerce – ITA- U.S. Commercial Service in 1997 Plaintiff has continued to work, educate various colleagues and businesses with their global presence. The same Agency where Plaintiff did my internship 20 years ago Plaintiff learned of all the U.S. Department of Commerce, International Trade Administration products and services. President Ernie Bower of the U.S. ASEAN Business Council where Plaintiff was the lead assistant for The U.S. Ambassadors Tour held in Irvine, CA in1997. Plaintiff was presenting to a large audience for our former Malaysian Ambassador, Mr. John R. Malott. This Trade Mission was conducted by our Irvine, U.S. Commercial Service.

9. After Plaintiff,s internship, Plaintiff went to work for the California Trade & Commerce Agency and worked closely with the U.S. Commercial Service. Plaintiff has been in Global Trade for over 20 years. Plaintiff has documented evidence of what has taken place in 5 months of working for the Chicago USEAC Office of Plaintiff's federal service.

10. Complainant, formerly an International Trade Specialist, GS-1140-12, with the U.S. Commercial Service, International Trade Administration, has filed a case for investigation with the Office of Inspector General (OIG). The Inspector General (OIG) office has agreed to investigate the case based on wrongful termination, civil extortion, whistle blower violations which the Complainant Arjun Bakshi has submitted documented evidence for the policy violation(s).

11. As evidence of discrimination and harassment the Plaintiff alleges the following acts of policy violations which lead to the plaintiff wrongful termination.

12. On January 7, 2021, the U.S. Department of Commerce, Chicago, IL Director- Hovan Asdourian initiated a video conference call by the Microsoft Teams Platform, the plaintiff Arjun

Bakshi has documented evidence of this invite and call which the Hovan Asdourian denies. On this call there were profound and discriminative comments made about Arjun Bakshi's race, religion , and age. On this call the Commerce Department Director Hovan Asdourian asked for various personal contact information. This is a violation of the U.S. Department of Commerce Policies. Documented proof can be given for the call invite, the same call which Director Hovan Asdourian denies.

13. On June 2, 2021, Asdourian requested that Complainant send him large quantities of products, such as KN95 masks and diabetic socks, which appeared to be more than for commercial purposes than personal use. All these purchases/shipping were at my personal time and expense. This is a direct policy violation and there is documented proof of this. Abuse of Power and U.S. Government Agency Violation.

14. On June 23, 2021, Asdourian had Complainant meet with his son in Los Angeles in order to help secure and import/export deal. Complainant says this was not related to Complainant's job duties. Asdourian wanted Complainant to give his son $700,000 credit from Complainant's contact for 200,000 boxes of masks. This is a direct policy violation. There is documented proof of this. Abuse of Power and U.S. Government Agency Violation.

15. On or around August 11, 2021, I received another call from Hovan Asdourian asking for more masks and socks. Second request from the Director Abuse of Power and U.S. Government Agency Violation.

16. During the All-Hands Meetings held every Wednesday, employees were told strictly not to conduct any work-related meetings, this was done during the Covid 19 Pandemic. Hovan Asdourian, risked Plaintiff's life and Plaintiff's family's life by forcing me to meet his son Ross Asdourian. Abuse of Power and U.S. Government Agency Violation.

17. Asdourian deliberately did not sign Complainant's performance review at the end of the fiscal year. Complainant says that he believes that Asdourian did not do so because he (Complainant) would have met all of the performance metrics and because there were no complaints about his performance. Abuse of Power and U.S. Government Agency Violation.

18. Complainant contacted HR two times and was told they would get back to him. No one reached back to complainant where complainant could show the documented evidence and explain the situation. HR was contacted a month prior to termination. Whistleblower violation.

19. Documented proof showing other colleagues from the same office commenting on the Director Hovan Asdourian and how they have to change the office topic to avoid conflict with the Director.

20. On September 24, 2021, Asdourian issued him a notice removing him from Federal service during his probationary period. Wrongful Termination Abuse of Power and U.S. Government Agency Violations.

21. Plaintiff has submitted documented proof of Hovan Asdourian asking Plaintiff the tracking number for his masks two times. All conducted during ITA working hours. Abuse of Power and U.S. Government Agency Violation.

22. Plaintiff was terminated after Plaintiff refused to be a part of the Asdourian family business. Plaintiff clearly wrote on the message to Ross Asdourian "I do not have the time nor am I allowed to do this". After stating this Hovan Asdourian planned my termination. Abuse of Power and U.S. Government Agency Violation.

23. Plaintiff was threatened by his MS Teams calls and felt compelled to do these types of activities because Hovan Asdourian was Plaintiff supervisor, and as someone on a probation period, Plaintiff was concerned that if Plaintiff did not do these things, Hovan Asdourian would

COMPLAINT

terminate me. This created a tremendous amount of fear in the Plaintiff, with ongoing constant harassment and abuse of power from Hovan Asdourian. Abuse of Power and U.S. Government Agency Violation.

24. As a direct and proximate cause of the Defendant's wrongful and discriminatory actions, the Plainiff suffered losses in the form of loss wages as well as other economic and non-economic damages thereby giving rise to the instant complaint.

25. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## COUNT I

## WRONGFUL TERMINATION

26. The Plaintiff hereby references and incorporates paragraphs 1 through 25 as though set forth herein at length.

27. The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (Yau v. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)

28. "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].)

COMPLAINT

29. "[T]his court established a set of requirements that a policy must satisfy to support a tortious discharge claim. First, the policy must be supported by either constitutional or statutory provisions. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be 'fundamental' and 'substantial.' " (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889–890 [66 Cal.Rptr.2d 888, 941 P.2d 1157], footnote omitted.)

30. "[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." (Gantt, supra, 1 Cal.4th at pp. 1090–1091, internal citations and footnote omitted, overruled on other grounds in Green v. Ralee Engineering Co. (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]; accord Stevenson, supra, 16 Cal.4th at p. 889.)

31. "[T]ermination of an employee most clearly violates public policy when it contravenes the provision of a statute forbidding termination for a specified reason … ." (Diego, supra, 231 Cal.App.4th at p. 926)

32. Discrimination in employment may support a claim of tortious discharge in violation of public policy." (Kelley v. The Conco Cos. (2011) 196 Cal.App.4th 191, 214 [126 Cal.Rptr.3d 651].)

33. In the instant matter, the Plaintiff has clearly establishes an employee / employer relationship as one of the necessary elements for a claim of wrongful termination.

COMPLAINT

34. Furthermore, with the issuance of a notice removing the Plaintiff from federal service during the probationary period, it is clear that the Plaintiff has also established termination from employment.

35. The facts in the instant matter also establish a claim that the termination was in violation of public policy; not only did the Plaintiff oppose unlawful conduct, but the Plaintiff was also subjected to numerous explicit instances of discrimination and a discriminatory work environment which is what ultimately caused the termination of the Plaintiff in retaliation for the same which is directly in violation of statutory protections and public policy thereby establishing wrongful termination of employment under California law.

36. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totalling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

37. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## COUNT II

## HOSTILE WORK ENVIRONMENT

38. The Plaintiff hereby references and incorporates paragraphs 1 through 12 as though set forth herein at length.

39. To allege a hostile work environment claim, a plaintiff must show: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Nurse v. City of Alpharetta*, 775 Fed.Appx. 603, 607 (11th Cir. 2019) (per curiam (quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)).

40. In the instant matter, there is no dispute that the Plaintiff belongs to a protected group as an individual of Asian / Indian national origin.

41. Clearly based on the factual allegations in the instant matter, the Plaintiff was subjected to unwelcome harassment in numerous instances including but not limited to being subjected to the constant explicit racial harassment engaged in by the Hovan Asdourian described in detail in the statement of facts including constant remarks about the Plaintiff and 'his people' selling fake products, feeling at home with his own curry food, all being tech people, and other explicit racially biased references described herein.

42. The harassment was clearly based on the Plaintiff's membership in a protected group and the constant and continuous incorporation of racially biased references was brought up on such a regular and recurring basis that it had a substantial pervasive impact on the ability of the Plaintiff to regularly perform and fulfill their duties of employment without suffering from the constant burden of this racially hostile and biased work environment.

43. The Plaintiff reported these claims to Human Resources on numerous occasions and no action was taken to prevent this hostile work environment from continuing or protect the Plaintiff in any manner whatsoever.

COMPLAINT

44. Based on the foregoing, it is clear that the Plaintiff suffered discrimination on the basis of race and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for exercising rights under the same.

45. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totalling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

46. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## COUNT III

## WHISTLEBLOWER PROTECTION VIOLATION

47. The Plaintiff hereby references and incorporates paragraphs 1 through 12 as though set forth herein at length.

48. As the California Supreme Court recently explained, Section 1102.5 provides whistleblower protections to employees who disclose wrongdoing to authorities. As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee "has reasonable cause to believe . . . discloses a violation of state or federal statute" or of "a local, state, or federal rule or regulation" with a government agency, with a person with

COMPLAINT

authority over the employee, or with another employee who has authority to investigate or correct the violation. Lawson v. PPG Architectural Finishes, Inc., 12 Cal. 5th 703, 709 (2022) (ellipsis in original).

49. "An employee injured by prohibited retaliation may file a private suit for damages" against his former employer. Id.

50. Here, there were numerous occasions where the supervisor complain of asked the Plaintiff to send him large numbers of KN95 masks and diabetic socks personally and not in relation to the regular office work of the Plaintiff which is an explicit violation of the policies of the Defendant's organization as a whole.

51. The Plaintiff reported these claims to Human Resources on numerous occasions in addition to the consistent stream of racially biased remarks made by the Defendant on countless instances and no action was taken to reprimand the supervisor complained of in any manner whatsoever.

52. Instead, Asdourian deliberately did not sign Complainant's performance review at the end of the fiscal year. Complainant says that he believes that Asdourian did not do so because he (Complainant) would have met all of the performance metrics and because there were no complaints about his performance and the Plaintiff received a notice removing him from Federal service during his probationary period.

53. Based on the foregoing, the Plaintiff has established a *prima facie* case of whistleblower retaliation where the burden of proof will be on the Defendant to justify their adverse action taken against the Plaintiff throughout the course of litigation.

54. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totalling the amount of backpay and front pay as well as any

and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

55. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## JURY TRIAL DEMANDED

56. The Plaintiff hereby demands a trial by jury with regards to any and all genuine disputes of material facts pertaining to the instant matter.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests as follows:

1. COMPENSATORY DAMAGES in an amount to be determined in a trial by jury.

2. PUNITIVE DAMAGES in an amount to be determined in a trial by jury.

3. INJUNCTIVE RELIEF reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

3. COSTS AND FEES associated with prosecuting the instant matter.

4. ANY AND ALL OTHER RELIEF DEEMED NECESSARY.

DATED: November 20, 2023                    Respectfully Submitted,

COMPLAINT