

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN - 2 2024

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

1   Arjun Bakshi
    4671 Ranchgrove Drive
2   Irvine, CA 92604
    Tel: (310) 770 – 3318
3   Email: oobakshi@gmail.com

4   **UNITED STATES DISTRICT COURT**
5   **CENTRAL DISTRICT OF CALIFORNIA**

6

7   ARJUN BAKSHI,                          Case No.: 8:22cv2170-CJC-DFMx

             Plaintiff,
8
    vs.                                    SECOND AMENDED COMPLAINT
9
    GINA RAIMONDA, SECRETARY U.S.
10  DEPARTMENT OF COMMERCE

11           Defendant

12              **COMPLAINT AT LAW AND IN EQUITY**

13  AND NOW, come the Plaintiff, Arjun Bakshi, by and through himself, *pro se,* to file the second amended complaint

14  and in support thereof avers as follows:

15      1.  The Plaintiff hereby initiates that second amended complaint against the Defendants by way of wrongful

16          termination of employment, violation of whistleblower protections, and a hostile work environment

17          pertaining to the Plaintiff's time of employment with the U.S. Department of Commerce, International

18          Trade Administration which ultimately resulted in termination without justification.

19                      **I.      JURSIDICTION**

20      2.  This is a civil action authorized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq.,

21          for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for

22          exercising rights under the same 29 U.S.C. § 206 establishing jurisdiction in violations of fair labor

23          standards as well as 29 U.S.C. § 206 623 which prohibits discrimination against individuals in addition to

24          state and federal law pertaining to wrongful termination of employment in addition to hostile work

25          environment and retaliation.

26                      **II.     VENUE**

27

28
    SECOND AMENDED COMPLAINT - 1

3.  Venue is proper as the Plaintiff resides within the instant district and the acts complained of have taken place mostly or entirely within instant district.  In addition, the Defendant(s) regularly transact within the instant district.

### III.    PARTIES

4.  The Plaintiff's name is Arjun Bakshi. At all relevant times in the matter, Plaintiff resides within the Central District of California at 4671 Ranchgrove Drive, Irivne, CA 92604.

5.  Defendant Gina Raimondo, Secretary of the U.S. Department of Commerce at all times relevant in the matter serves at the address of 1401 Constitution Avenue, NW Washington D.C. 20230.

### STATEMENT OF FACTS

6.  Plaintiff's first job in international trade was an internship within the U.S. Department of Commerce – ITA- U.S. Commercial Service in 1997 at the age of 22. [Exhibit J] Since then plaintiff has continued to work in different capacities in the realm of international commerce and international commercial trade. During his internship, with the same agency in which Plaintiff was wrongfully terminated from he gained experience in the U.S. Department of Commerce's International Trade Administration in products and services. During this internship, Plaintiff was a lead assistant under the purview of the President of the U.S. ASEAN Business Council, Ernie Bower.

7.  After Plaintiff's internship in 1997, he continued his work within the California Trade & Commerce Agency and worked closely with the U.S. Commercial Service. Plaintiff has been in Global Trade for over 20 years.

8.  Plaintiff was hired on April 12, 2021 as a International Trade Specialist. Plaintiff was a direct report of Department of Commerce Chicago Director Hovan Asdourian.

9.  Chicago Director Hovan Asdourian is an actor of the Department of Commerce as he was hired as a International Trade Supervisor for at least 6 years.

10. Plaintiff was terminated on September 24, 2021 and is now asserting that he was wrongfully terminated based on the following facts.

11. Before refusing to partake in Asdourian's personal business,  Plaintiff received no negative work performance reviews and was not placed on notice of any poor work performance during his probationary

SECOND AMENDED COMPLAINT - 2

period. Exhibit I shows the Plaintiff's receipt of a signed certification, showing outstanding and proficient work performance. [Exhibit I]

12. After refusing to partake in Asdourian's personal business, Plaintiff received two separate letters claiming that his work had declined in value. Plaintiff was told that he was going to receive more clarity on his declining work value, but was terminated before having that meeting.

13. On January 7, 2021, the U.S. Department of Commerce, Chicago Director Hovan Asdourian initiated a video conference call by the Microsoft Teams Platform. [Exhibit B] On June 25th, Asdourian made discriminative comments towards the Plaintiff race, religion, and age. Plaintiff was also asked to give Asdourian his personal contact information to be contacted during work about non work related matters, disregarding a business inquiry made by the Plaintiff. [Exhibit A] Asking for personal contact information over government platforms is a violation of the agency's policies.

14. Plaintiff made several attempts to reach out to Human Resources in order file a complaint regarding the comments that were made by Asdourian about the Plaintiff's race and complaints regarding the harassment received due to Asdourian asking for masks but received no response. More specifically on September 13, 2021 and September 16, 2021, Plaintiff reached out the Shannon Lacy in Human Resources and received no response. [Exhibit C and Exhibit D] Lack of response by Human Resources as recourse for the Plaintiff is a violation of agency policy.

15. On June 2, 2021, Asdourian in his capacity as a director within the Department of Commerce requested that Plaintiff send him large quantities of products, such as KN95 masks and diabetic socks which Plaintiff had access to through contacts held prior to employment with the Department of Commerce. Through verbal communication with Asdourian, it was clear that the products were for his personal business rather than agency purposes. Asdourian also made multiple inquiries about the shipment information during work hours and via government platform. All shipping and purchases were made at the personal time and expense of the Plaintiff. [Exhibit F] This demonstrates a violation of agency policy and rules.

16. On June 23, 2021 Asdourian asked Plaintiff to meet his Asdourian's son in Los Angeles in order to secure the masks and socks. This order and its shipment to Asdourian's son was not a regular conduct of Plaintiff's job duties as a International Trade Specialist. Plaintiff followed through with the delivery of this shipment out of fear of pleasing his direct boss, Asdourian. Asdourian verbally requested that his son be

SECOND AMENDED COMPLAINT - 3

given a $700,000 credit for securing the sale of the masks and socks which Plaintiff refused. Asking employees to engage in personal business is violation of agency policy and rules.

17. During a subsequent All-Hands Meeting, employees were informed that new COVID-19 protocol prohibited them from conducting any in person meetings. This demonstrates a violation of agency policies and rules.

18. Asdrourian's son, Ross Asdourian, continued to reach out to Plaintiff asking for more shipment and further business through Plaintiff's previously held contacts. Plaintiff refused Asdourian's son saying that "I do not have the time nor am I allowed to do this." [Exhibit E]

19. Shortly after the refusal of Asdourian's son's request, Plaintiff was fired from his role.

20. Plaintiff was told his only remedy was to file a claim through the Equal Employment Opportunity Commission.

21. Plaintiff filed a complaint with the Equal Employment Opportunity Commission following his termination. [Exhibit F] Plaintiff has also exhausted the remedies suggested to him by the EEOC. [EEOC Number: 570-2022-00827X]

22. After the Plaintiff filed a complaint with the EEOC, Chicago Director Hovan Asdourian retired abruptly without notice to other collegues.

23. Plaintiff has suffered emotional and monetary losses due to his wrongful termination. He has not been able to gain employment with the government, agency in trade, or outside businesses because of this emotional stress and toll.

## COUNT 1

## WRONGFUL TERMINATION

24. The Plaintiff hereby references and incorporates paragraphs 1 through 23 as though set forth herein at length.

25. The elements of claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm. *Yau v Allen* 229 Cal.App.4th 144, 154 (2014)

SECOND AMENDED COMPLAINT - 4

26. Plaintiff and the Department of Commerce meet the first element as the plaintiff was hired to work as a International Trade Specialist with the Department of Commerce in April 12, 2021. The Department of Commerce is acting as the plaintiff's employer through the actions of Chicago Director Hovan Asdourian.

27. Plaintiff meets the second element as he was terminated by Chicago Director Hovan Asdourian on September 24, 2021.

28. Plaintiff meets the third element as he was fired because there is no evidence of him being fired for employee misconduct but rather his refusal to be apart of his bosses' personal business. Plaintiff was also taken advantage of as he felt compelled to follow directions of his boss during his probationary period. Once Plaintiff refused to follow directions that go against the agency standard of personal business matters benefitting from government employment, he was terminated.

29. As a direct and proximate cause of the Defendant's wrongful and discriminatory actions, the Plaintiff suffered losses in the form of loss wages and non-economic damages, meeting the fourth requirement.

30. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and/or omissions described herein as well as punitive damages where applicable to deter the Defendant from similar future misconduct.

31. "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167. 170 [164 Cal.Rptr. 839, 610 P.2d 13301)

32. "This court established a set of requirements that a policy must satisfy to support a tortious discharge claim. First, the policy must be supported by either constitutional or statutory I provision. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental and "substantial.* * (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 889-890 [66 Cal.Rptr.2d 888, 941 P.2d 1157], footnote omitted.)

33. "[T]he cases in which violations of public policy are found generally fall into four categories (1) refusing to violate a statute; (2) performing a statutory obligation (3) exercising a statutory I right or privilege; and (4) reporting an alleged violation of a statute of public importance. (Gantt, supra, 1 Cal.4th at pp. 1090-1091, internal citations and footnote omitted, overruled on other grounds in Green v. Ralee Engineering Co.

(1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]: accord Stevenson, supra, 16 Cal.4th at p. 889.)

34. "(Termination of an employee most clearly violates public policy when it contravenes the I provision of a statute forbidding termination for a specified reason ... (Diego, supra, 231Cal.App.4th at p. 926) Discrimination in employment may support a claim of tortious discharge in violation of public policy." (Kelley v. The Conco Cos. (2011) 196 Cal.App.4th 191, 214 (126 Cal.Rptr.3d 6511.)

35. In the instant matter, the Plaintiff has clearly establishes an employee / employer relationship as one of the necessary elements for a claim of wrongful termination.

36. Furthermore, with the issuance of a notice removing the Plaintiff from federal service during the probationary period, it is clear that the Plaintiff has also established termination from employment.

37. The facts in the instant matter also establish a claim that the termination was in violation of I public policy; not only did the Plaintiff oppose unlawful conduct, but the Plaintiff was also subjected to numerous explicit instances of discrimination and a discriminatory work environment which is what ultimately caused the termination of the Plaintiff in retaliation for the same which is directly in violation of statutory protections and public policy thereby establishing wrongful termination of employment under California law.

38. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totaling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

39. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## COUNT II

## HOSTILE WORK ENVIRONMENT

SECOND AMENDED COMPLAINT - 6

40. The Plaintiff hereby references and incorporates paragraphs I through 23 as though set forth herein at length.

41. To allege a hostile work environment claim, a plaintiff must show: "(1) he belongs to a I protected group: (2) he was subjected to unwelcome harassment: (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Harris v Forklift Systems* 510 U.S. 17 (1993)

42. In the instant matter, there is no dispute that the Plaintiff belongs to a protected group as an individual of Asian / Indian national origin.

43. Clearly based on the factual allegations in the instant matter, the Plaintiff was subjected to unwelcome harassment in numerous instances including but not limited to being subjected to the constant explicit racial harassment engaged in by the Defendant Hovan Asdourian described in detail in the statement of facts including constant remarks about the Plaintiff and 'his people' selling fake products, feeling at home with his own curry food, all being tech people, and other explicit racially biased references described herein.

44. Plaintiff's direct boss Hovan Asdourian created a tone and environment that allowed for certain remarks to be made that were detrimental to minorities working within the agency and potential clients. [Exhibit G]

45. The harassment was clearly based on the Plaintiff's membership in a protected group and the constant and continuous incorporation of racially biased references was brought up on such a regular and recurring basis that it had a substantial pervasive impact on the ability of the Plaintiff to regularly perform and fulfill their duties of employment without suffering from the constant burden of this racially hostile and biased work environment.

46. The Plaintiff reported these claims to Human Resources on numerous occasions and no action was taken to prevent this hostile work environment from continuing or protect the Plaintiff in any manner whatsoever.

47. Based on the foregoing, it is clear that the Plaintiff suffered discrimination on the basis of race and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. $$ 2000e et seq., for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for exercising rights under the same.

SECOND AMENDED COMPLAINT - 7

48. During his probationary period, Plaintiff witnessed his peers engage in discriminatory conduct and racist remarks that made him uncomfortable as a member of a protected class. [Exhibit G]

49. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totaling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

50. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the I instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## COUNT III

## WHISTLEBLOWER PROTECTION VIOLATION

51. The Plaintiff hereby references and incorporates paragraphs I through 23 as though set forth herein at length.

52. As the California Supreme Court recently explained, Section 1102.5 provides whistleblower protections to employees who disclose wrongdoing to authorities. As relevant here, section 1102.5 prohibits an employer from retaliating against an employee for sharing information the employee "has reasonable cause to believe ... discloses a violation of state or federal statute" of*a local, state, or federal rule or regulation" with a government agency, with a person with authority over the employce, or with another employee who has authority to investigate or correct the violation. Lawson v. PPG Architectural Finishes, Inc., 12 Cal. Sth 703, 709 (2022) (ellipsis in original).

53. "An employee injured by prohibited retaliation may file a private suit for damages" against his former employer. Id.

54. Here, there were numerous occasions where supervisor of the Plaintiff asked the Plaintiff to send him large numbers of KN9S masks and diabetic socks personally and not in relation to the regular office work of the Plaintiff which is an explicit violation of the policies of the Defendant's organization as a whole.

SECOND AMENDED COMPLAINT - 8

55. The Plaintiff reported these claims to Human Resources on numerous occasions in addition to the consistent stream of racially biased remarks made by the Defendant on countless instances and no action was taken to reprimand the supervisor complained of in any manner whatsoever.

56. Instead, Asdourian deliberately did not sign Complainant's performance review at the end of the fiscal year. Complainant says that he believes that Asdourian did not do so because the Plaintiff would have met all of the performance metrics and because there were no complaints about his performance and the Plaintiff received a notice removing him from Federal Service during his probationary period.

57. Based on the foregoing, the Plaintiff has established a prima facie case of whistleblower retaliation where the burden of proof will be on the Defendant to justify their adverse action taken against the Plaintiff throughout the course of litigation.

58. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totalling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

59. The Plaintiff is seeking compensatory damages for the breaches) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

## JURY TRIAL DEMANDED

60. The Plaintiff hereby demands a trial by jury with regards to any and all genuine disputes of material facts pertaining to the instant matter.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests as follows:

1. COMPENSATORY DAMAGES in an amount to determined in a trial by jury.

2. PUNITIVE DAMAGES in an amount to be determined in a trial by jury.

3. INJUCTIVE RELIEF reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

4. COSTS AND FEES associated with prosecuting the instant matter.

5. ANY AND ALL OTHER RELIEF DEEMED NECESSARY.

 

Dated January 2, 2023.

 

_____

Pro Se Plaintiff Name

SECOND AMENDED COMPLAINT - 10

# EXHIBIT A

EXHIBIT A

< Hovan Asdourian ›
Status unknown

**Chat**          Files          More

June 22, 1:44 PM

Hope your day is going well. Had a great intro call with Jenny May - Global China Team Leader, she is here to help our team with any China entry barriers - IP issues

Will share with team

June 25, 8:15 AM

is your cell 310 770 3318 and your oobakshi@gmail.com correct

Exhibit A.

 Gmail

**Arjun Bakshi <oobakshi@gmail.com>**

---

## e-introduction

---

**Hovan Asdourian** <hovanasdo@gmail.com>                          Fri, Jun 25, 2021 at 8:37 AM
To: oobakshi@gmail.com, Ross Asdourian <ross.asdo@gmail.com>

Arjun Bakshi meet my son Ross
Arjun's cell - 310-770-3318
Ross's cell 206-669-0016


Regards,

Hovan Asdourian
904-583-5181

# EXHIBIT B

 Gmail

Arjun Bakshi <oobakshi@gmail.com>

## Would like to connect with you
6 messages

**Hovan Asdourian** <Hovan.Asdourian@trade.gov>                      Thu, Jan 7, 2021 at 7:42 AM
To: Arjun Bakshi <oobakshi@gmail.com>

Hi Arjun,

I would like to connect with you late this afternoon (Thursday, Jan. 7) or this Friday morning.

Let me know and provide me with 2 potential times so I can email you a videoconferencing link using Microsoft Teams.
Thanks.

**Kind Regards,**

**Hovan Asdourian**

Director, U.S. Commercial Service- Chicago

U.S. Department of Commerce|International Trade Administration

233 N. Michigan Ave. Suite 260

Chicago, Il 60601

E-mail: hovan.asdourian@trade.gov

C: 312-433-9528



**Arjun Bakshi** <oobakshi@gmail.com>                      Thu, Jan 7, 2021 at 12:11 PM
To: Hovan Asdourian <Hovan.Asdourian@trade.gov>

Hello Mr. Asdourian,

I will be ready in the next 30 minutes. Which is 2:30 CST your time. I am very flexible for tomorrow if that's better for you.

My apologies for the delayed reply,

Sincerely,
Arjun.

**Arjun Bakshi**
Cell: +1 310.770.3318

The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

 Please consider the environment before printing this email or any attachments therein.

[Quoted text hidden]

---

**Hovan Asdourian** <Hovan.Asdourian@trade.gov>          Thu, Jan 7, 2021 at 12:23 PM
To: Arjun Bakshi <oobakshi@gmail.com>

Arjun,

Are you free between 3-4 pm your time today (pacific Time)?

[Quoted text hidden]

---

**Arjun Bakshi** <oobakshi@gmail.com>                          Thu, Jan 7, 2021 at 12:27 PM
To: Hovan Asdourian <Hovan.Asdourian@trade.gov>

Hello Mr. Asdourian,

Yes, sir. Confirmed. I will be ready by 3 pm (Pacific Time) today.

Sincerely,
Arjun

---

**Arjun Bakshi**
Cell: +1 310.770.3318

The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

 Please consider the environment before printing this email or any attachments therein.

[Quoted text hidden]

---

**Hovan Asdourian** <Hovan.Asdourian@trade.gov>          Thu, Jan 7, 2021 at 12:35 PM
To: Arjun Bakshi <oobakshi@gmail.com>

I will email you Outlook invite with link for Microsoft Teams videoconferencing. Talk later today.

[Quoted text hidden]

---

**Arjun Bakshi** <oobakshi@gmail.com>                          Thu, Jan 7, 2021 at 12:38 PM
To: Hovan Asdourian <Hovan.Asdourian@trade.gov>

Thank you, Mr. Asdourian,

*EXHIBIT B*

Looking forward to our video call.

Sincerely,
Arjun

_____

**Arjun Bakshi**
**Cell:  +1 310.770.3318**


The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

 Please consider the environment before printing this email or any attachments therein.


[Quoted text hidden]

# EXHIBIT C

Exhibit C



# EXHIBIT D

Exhibit D

Shahen Lacy ›
Status unknown

Chat          Files          More

September 16, 8:12 AM

Thank you!!!

September 16, 10:48 AM

Hi Ms. Lacy, if you have a min, I need to discuss with you some stuff going please, I know you have a lot going

September 16, 12:52 PM

Hi Arjun, my day took an unexpected turn. We have two employees retiring this Friday. So, I need to take care of



**Ross Asdou...**
9:14 PM

8:50 PM

Amazing. 8:51 PM

Ok let's do it in the morning. The PPE rodeo has taken enough sleep from all of us. 8:51 PM

I know, besides I cannot do this stuff no time nor am I allowed to 8:52 PM

Sleep well, catch up tomorrow 8:52 PM

 8:52 PM

 8:52 PM

 Message   

# EXHIBIT F

EXHIBIT F



Exhibit F



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer and**
**Assistant Secretary for Administration**
Washington, D.C. 20230

September 8, 2022

_____

Arjun Bakshi,                                  )
Complainant                                    )
                                               )
v.                                             )      Complaint Number:  55-2022-00004
                                               )      EEOC Number:  570-2022-00827X
Gina Raimondo, Secretary                       )
U.S. Department of Commerce                    )
                                               )

_____

## NOTICE OF FINAL ORDER

This is the Department of Commerce's final action in Complaint Number 55-2022-00004
filed by Arjun Bakshi (Complainant) against the International Trade Administration
(Agency), U.S. Department of Commerce (Department).

### I.      Procedural History

Following the completion of the investigation in his complaint, Complainant exercised his
post-investigative options and requested a hearing before an Equal Employment
Opportunity Commission (EEOC) administrative judge (AJ).  The Department's Office of
Civil Rights (OCR) subsequently transmitted a copy of the complaint file to the EEOC.

EXHIBIT G

Exhibit G



# EXHIBIT I

EXHIBIT I

# United States Department of Commerce

## CERTIFICATE OF TRAINING

### Arjun Bakshi

IS HEREBY RECOGNIZED FOR SUCCESSFUL COMPLETION OF

## THE INTERNATIONAL TRADE INTERNSHIP PROGRAM
## AT THE NEWPORT BEACH EXPORT ASSISTANCE CENTER



Richard M. Swanson, Director

January 2003

FORM CD-33 (REV. 11-97)

10/4/23, 12:39 AM    Jasmine Braswell acknowleding my Global Teams presentation to 128 colleagues during our Teams Meeting | Used me and other vol...

Case 8:22-cv-02170-CJC-DFM    Document 38    Filed 01/02/24    Page 30 of 36    Page ID #:246



10/4/23, 12:32 AM
Giving client feedback on their questions (1).jpg
Case 8:22-cv-02170-CJC-DFM   Document 38   Filed 01/02/24   Page 31 of 36   Page ID #:149





EXHIBIT J



*U.S. Export Assistance Center*
*3300 Irvine Avenue, Suite 307*
*Newport Beach, CA 92660*

**U.S.
COMMERCIAL
SERVICE**
*United States of America
Department of Commerce*

*www.BuyUSA.gov/socal/nb*
*Tel. (949) 660-1688*
*Fax (949) 660-1338*

**JANUARY 2003**

### INTERNATIONAL TRADE INTERNSHIP CERTIFICATION

Mr. Arjun Bakshi has completed a full time comprehensive and in-depth international trade internship program, from February 21, 1997 until July 21,1997, at the Orange County Export Assistance Center. This domestic field office of The Commercial Service is the export promotion and facilitation unit within the International Trade Administration of the United States Department of Commerce.

During the time of the internship, Mr. Bakshi was employed in the domestic and international marketing arena. He successfully became familiarized with the task responsibilities of outreach and promotion of Orange County firms' export endeavors. Please see the following highlights:

> ➢ Research and identify the top export countries for many different products and services.

> ➢ Research and identify target countries' market potential, demand trends, size, competition, market access, regulations and standards, distribution practices, best sales prospects, and end users.

> ➢ Facilitate international advertising of many different products and services.

> ➢ Implement agent and distributor searches for international markets.

> ➢ Research and identify potential international buyers, importers and distributors.

> ➢ Implement primary market research for unique products and international markets.

> ➢ Coordinate international travel for Trade Specialists and international visitors.

> ➢ Coordinate domestic and international trade show events.

> ➢ Composed sales and marketing letters including international correspondence; marketing and sales research utilizing electronic databases, E-Mail, internet and WinFax Pro; PC applications use included Word, Excel, Lotus Notes, data transfer and manipulation in various formats.

> ➢ Conduct international background investigations of international customers.

Working under the immediate supervision of International Trade Specialist Rizwan Khaliq, Mr. Bakshi's efforts and accomplishments in our office were executed to our full satisfaction. He also fulfilled his responsibilities and tasks demonstrating precision and independence.

We wish Mr. Bakshi all the best personally and much success in his career. I believe he will be an asset to any company with which he is associated. If you have any questions regarding Mr. Bakshi, please contact our office at (949) 660-1688.

United States Export Assistance Center

Richard M. Swanson
Director

*"Serving the needs of the Southern California trade community"*



| U.S.-ASEAN Business Council, Inc. | 1400 L Street, N.W. Suite 375 Washington, D.C. 20005-3509 202-289-1911 Fax: 202-289-0519 |
|---|---|

July 1, 1997

Mr. Paul Tambakis
Director
U.S. Department of Commerce
Orange County EAC
Newport Beach, CA

Dear Paul:

On behalf of the U.S.-ASEAN Business Council, I want to thank you for all your efforts in organizing the Irvine leg of the 1997 U.S. Ambassadors Tour. By all accounts, our stop in Southern California was a great success. You and your staff — especially, Mr. Riz Khaliq and your assistants Arjun, Alex, and Tony — were invaluable in pulling together the Irvine seminar day. I know that Mr. Khaliq worked above and beyond the call of duty to recruit participants and to arrange the one-on-one meetings for the Senior Commercial Officers.

Thanks to you, this tour was our best ever. It was also a key part of our year long celebration of ASEAN's 30th anniversary. The tour program has now brought home the message of ASEAN's importance to the U.S. economy by reaching over 10,000 American executives and workers, visiting more than 20 cities, and bringing our chief envoys in Southeast Asia together with the state and local government leaders and the media.

The Ambassadors and Commercial Officers learned a great deal from the opportunity to meet and interact with the local business community. The information they gained during the

Mr. Paul Tambakis
July 1, 1997
Page Two

seminar day will serve our Ambassadors and Senior Commercial Officers well as they continue to promote U.S. business interests in their respective countries.

Thank you again for your hard work.

Sincerely yours,

Ernest Z. Bower
President

cc:    Ms. Marjory Searing, US FCS
       Ms. Alice Davenport, US FCS
       Mr. Rizwan Khaliq, US FCS/Orange Country
       ✓ Arjun Bakfhi
       Tony Michalski
       Alex Mills