

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR - 7 2024

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

1  Arjun Bakshi
   4671 Ranchgrove Drive
2  Irvine, CA 92604
   Tel: (310) 770 – 3318
3  Email: oobakshi@gmail.com

4            **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
5

6

7  ARJUN BAKSHI,                          Case No.: 8:22cv2170-MRA-DFMx

           Plaintiff,
8

9  vs.                                    THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT
                                          WRONGFUL TERMINATION
   GINA RAIMONDA, SECRETARY U.S.          HOSTILE WORK ENVIRONMENT
10 DEPARTMENT OF COMMERCE                 WHISTLEBLEWER PROTECTION VIOLATION
                                          RETALIATION
11         Defendant

12              **COMPLAINT AT LAW AND IN EQUITY**

13 AND NOW, come the Plaintiff, Arjun Bakshi, by and through himself, *pro se,* to file the third amended complaint

14 and in support thereof avers as follows:

15    1.  The Plaintiff hereby initiates that third amended complaint against the Defendants by way of wrongful

16        termination of employment, violation of whistleblower protections, and a hostile work environment

17        pertaining to the Plaintiff's time of employment with the U.S. Department of Commerce, International

18        Trade Administration which ultimately resulted in termination without justification.

19                          **I.    JURSIDICTION**

20    2.  This is a civil action authorized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq.,

21        for employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for

22        exercising rights under the same 29 U.S.C. § 206 establishing jurisdiction in violations of fair labor

23        standards as well as 29 U.S.C. § 206 623 which prohibits discrimination against individuals in addition to

24        state and federal law pertaining to wrongful termination of employment in addition to hostile work

25        environment and retaliation.

26

27

28 THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE
   WORK ENVIRONMENT   WHISTLEBLEWER PROTECTION VIOLATION   RETALIATION   1

## II.   VENUE

3.   Venue is proper as the Plaintiff resides within the instant district and the acts complained of have taken place mostly or entirely within instant district.  In addition, the Defendant(s) regularly transact within the instant district.

## III.   PARTIES

4.   The Plaintiff's name is Arjun Bakshi. At all relevant times in the matter, Plaintiff resides within the Central District of California at 4671 Ranchgrove Drive, Irivne, CA 92604.

5.   Defendant Gina Raimondo, Secretary of the U.S. Department of Commerce at all times relevant in the matter serves at the address of 1401 Constitution Avenue, NW Washington D.C. 20230.

## STATEMENT OF FACTS

6.   The Plaintiff's career in international trade began with an internship at the U.S. Department of Commerce's International Trade Administration (ITA) in 1997,at the age of 22. This internship was completed with distinction, earning the Plaintiff full honors and a letter of recommendation [Exhibit A].During this internship, the Plaintiff gained valuable experience in international commerce and trade, working under the purview of the President of the U.S. ASEAN Business Council, Ernie Bower. The Plaintiff's contributions were recognized with a commendation from the ASEAN President for their outstanding performance during the Ambassadors Tour. Since then, the Plaintiff has continued to build upon their expertise in various capacities within the realm of international commerce and trade. Their extensive experience and accomplishments underscore their dedication and proficiency in this field. The Plaintiff's successful internship and subsequent achievements serve as a testament to their qualifications and capabilities in international trade. It is evident that their wrongful termination from the U.S. Department of Commerce's International Trade Administration was not reflective of their competence or suitability for the role, but rather a result of unjust treatment and abuse of power, hostile work environment, whistleblower, retaliation and civil rights.

7.   Following the Plaintiff's successful internship in 1997, they embarked on a distinguished career path within the field of international trade. Subsequently, the Plaintiff served as an associate for the State of California

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   2

at the California Trade & Commerce Agency, where they worked in close collaboration with the U.S. Commercial Service domestic and global offices. This role allowed the Plaintiff to further hone their expertise and expand their knowledge of global trade practices. With a career spanning over 20 years in global trade, the Plaintiff has amassed a wealth of experience and expertise in navigating the complexities of international commerce. Their tenure in various roles within government agencies and trade organizations underscores their commitment to advancing the interests of international trade and fostering economic growth for U.S.A based companies. The Plaintiff's extensive background and track record of success serve as a testament to their proficiency and dedication in the field of international trade. It is evident that their wrongful termination from the U.S. Department of Commerce's International Trade Administration was not only unjust but also failed to recognize the valuable contributions they have made to the realm of global commerce for U.S.A. based companies over the course of their career.

The stress and ongoing mental anxiety inflicted on the Plaintiff by these actions highlight the severity of the Department of Commerce agency director Hovan Asdourian's abuse of power and misconduct, which goes beyond professional misjudgment to a deliberate neglect of duty and respect for others.

8. Violation of Agency Policies: The initiation of a video conference call on January 7, 2021 Chicago Supervisor/Director Hovan Asdourian without the presence of another Department of Commerce employee is a clear breach of the agency's established communication protocols. This action not only contravenes specific guidelines but also raises questions about the transparency and accountability of Asdourian's actions. Exhibit B

9. Misrepresentation and False Statements: Providing false statements during internal investigations, especially under oath, compromises the integrity of the investigation process and undermines the trust placed in agency officials. This behavior has severe legal and professional consequences, qualifying as perjury. Throughout internal DOC and EEOC investigations under oath agency supervisor Asdourian falsely denied initiating or participating in this call. His rebuttal further contradicted agency regulations by stating that such calls require the presence of two Department of Commerce employees, thereby acknowledging the breach of protocol and against agency policy. The Plaintiff presented undeniable evidence of Asdourian initiating this unauthorized call. Exhibit B

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   3

10. Discriminatory Remarks and Hostile Work Environment: The comments made by Asdourian, as described, are discriminatory and contribute to creating a hostile work environment. During this inappropriate and policy-violating call, Asdourian made unsettling and discriminatory remarks towards the Plaintiff, commenting on racial and religious tensions and making derogatory statements about the Plaintiff's ethnic food "you can eat curry there are plenty of your kind in Chicago"."Are you ready to move to Chicago? there are too many Mexicans and Blacks there" Such remarks violate principles of equality and respect, which are cornerstone values in any workplace, especially within government agencies that are held to higher standards of conduct. These actions violate various laws and regulations designed to protect employees from discrimination and harassment, including Title VII of the Civil Rights Act of 1964.

11. Invasion of Privacy and Professional Boundaries: Requesting personal contact information for non-work-related communications without a legitimate DOC agency reason is inappropriate and breaches professional boundaries. This behavior is an abuse of power and further to a hostile work environment. Such behavior was not only deeply extensive but also contributed to a hostile work environment, forcibly putting the Plaintiff in mental distress and anxiety. Additionally, Asdourian's request for the Plaintiff Arjun Bakshi personal contact information for non-work-related communications further disregarded professional boundaries and violated agency policy guidelines. Exhibit B and C  . These actions by Asdourian clearly demonstrate an abuse of power and a disregard for the norms and values expected within a governmental agency. The stress and mental anxiety inflicted on the Plaintiff by these actions highlight the severity of Asdourian's misconduct, which goes beyond professional misjudgment to a deliberate neglect of duty and respect for others.

12. On April 12, 2021, the Plaintiff was hired as an International Trade Specialist, marking the beginning of their employment within the U.S. Department of Commerce. As part of their role, the Plaintiff reported directly to Department of Commerce Chicago Director Hovan Asdourian. Prior to assuming their duties, the Plaintiff successfully completed all required government training and passed background checks,

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   4

demonstrating their readiness and suitability for the position. This hiring process underscores the Plaintiff's qualifications and readiness to contribute effectively to the Department of Commerce's mission in promoting international trade and fostering economic growth for U.S.A. companies. It is evident that the Plaintiff's termination was unjustified and failed to recognize their successful completion of all necessary requirements for employment within the agency.

13. Chicago Director Hovan Asdourian's tenure within the Department of Commerce spans at least six years, during which he held the position of Director. As a longstanding member of the Department, Asdourian's role as Director underscores his significant experience and responsibilities within the organization. This extensive tenure underscores his familiarity with agency policies, procedures, and responsibilities, further emphasizing the significance of his actions and decisions within the Department. Following an internal investigation conducted by both the Equal Employment Opportunity Commission (EEOC) and Department of Commerce, Hovan Asdourian, the Chicago Director, abruptly left with early retirement. This decision comes in the wake of the investigation's findings, that Asdourian's departure is linked to the outcomes of the abuse of power and having a hostile work environment by Asdourian. It is evident that the investigations and their subsequent findings have played a significant role in this development. Hovan Asdourian's decision to abruptly leave early following internal investigations conducted by both the Equal Employment Opportunity Commission (EEOC) and the Department of Commerce strongly show his culpability in acts of abuse of power, hostile work environment and wrongful termination of the Plaintiff. By choosing to retire early after these investigations, Asdourian implicitly acknowledges wrongdoing and attempts to evade accountability for his actions. This abrupt retirement underscores his disregard for agency policies and legal obligations, as well as his unwillingness to face the consequences of his misconduct. Asdourian's actions represent a betrayal of trust and a failure to uphold the principles of fairness and integrity expected of all employees within the agency. Asdourian left abruptly after internal investigations without letting other agency colleagues know of his departure.

14. On June 22, 2021 plaintiff Arjun Bakshi sent a message with an update during regular agency working hours about agency work related matters. Exhibit C

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   5

15. Between June 23th and 25th, 2021, the agency supervisor engaged in a deeply hostile and aggressive act by making an intimidating phone call to the plaintiff. The supervisor's directive was unmistakable and menacing: "Make sure you take care of Ross," followed by a commanding, "Do whatever he tells you to do." This confrontation left the plaintiff in a state of heightened distress, feeling extremely worried and scared for their safety and well-being.

16. On June 23, 2021 Agency Director Asdourian told Plaintiff to meet Asdourian's son in Los Angeles in order to get Asdourian's son masks and socks. This order and its shipment to Asdourian's son was not a regular conduct of Plaintiff's job duties as a International Trade Specialist. Plaintiff followed through with the delivery of a shipment out of fear of retaliation from the agency supervisor Asdourian. Plaintiff was told by agency director Hovan Asdourian to send the shipment to the agency supervisors Asdourian's home and pay for it , Later Asdourian verbally told plaintiff  that his son be given a $700,000 credit for securing the sale of the 200,000 boxes of masks and socks which Plaintiff refused. Asking employees to engage in personal business is violation of agency policy and rules. The Plaintiff's amount of stress and health problems started increasing in a very bad way. This was a very hostile work environment and abuse of power by the agency supervisor Hovan Asdourian. This was an extreme abuse of power and hostile work environment. After the plaintiff refused the plaintiff was terminated.

17. During a subsequent All-Hands Meeting, all agency employees were informed that new COVID-19 protocol prohibited them from conducting any in person meetings. The agency supervisor Asdourian made the plaintiff go against all rules. " Do what I say" "Take care of Ross" this demonstrates a violation of agency policies and rules. The plaintiff being a insulin dependent diabetic risked his life and his parents lives by being forced to attend this meeting during Covid-19 for the agency supervisor Asdourian who demanded the plaintiff meet with his son and "give him whatever he wants". This was a direct abuse of power, hostile work environment and multiple other agency policy violations. This led the plaintiff to a high level of stress and bad health.

18. The agency supervisor Asdourian replies back to plaintiff's message on June 25, 2021 with a delayed and inappropriate response from the agency supervisor, Hovan Asdourian, took three days to reply to

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT    WRONGFUL TERMINATION    HOSTILE WORK ENVIRONMENT    WHISTLEBLOWER PROTECTION VIOLATION     RETALIATION    6

Plaintiff's work-related update. Asdourian's response did not address the professional content of Bakshi's update. Instead, it veered into a request for personal contact information under the guise of making an "e-introduction." to the agency director's son Ross  Exhibit C and  D  Asdourian's used his position and abused his power to seek personal information from Plaintiff Bakshi, disregarding the work-related content of Bakshi's message, leading to a intimidating and hostile work environment. This ongoing harassment, violated plaintiff's privacy violations, creating a hostile work environment with a abuse of power.

19. On August 13, 2021 Dan Kim a Senior Trade Specialist who also works under the same agency supervisor Asdourian, warns everyone on the group chat that agency supervisor Hovan Asdourian  has joined the chat. The other agency colleague in the group chat says "we should redirect the conversation lol". All the colleagues in the office did not like the supervisors management and always complained with the ongoing hostile work enviroment. After the post there were likes on the comment posts which warned the employees the agency supervisor Asdourian had entered the work group chat. A clear understanding that the employees in the office did not get along with the agency supervisor Hovan Asdourian as they always made comments about him in his leadership making the whole office a hostile work enviroment.

20. On August 16, 2021 plaintiff shared a resource on the group chat for work. The agency supervisor Asdourian told the plaintiff " you will be dead by then". "you are to old".

21. On August 19, 2021 agency supervisor Asdourian asks plaintiff about a tracking number and "if the masks were mailed to the right address". This was done during agency working hours not related to agency work. This was an ongoing harassment from the agency supervisor Asdourian always asking about the supervisors personal work and not agency work. This left the plaintiff exhausted in fear and anxiety. This was a direct abuse of power with a hostile work environment.

22. On August 19, 2021 agency supervisor Hovan Asdourian tells the plaintiff "I only want mask and sock" Day after day ongoing harassment and abuse of power and hostile work environment  Exhibit H

23. On August 20, 2021 agency supervisor Hovan Asdourian avoids an update from plaintiff about agency work. Agency supervisor Asdourian again asks if his "masks were mailed". The continued harassment was on a daily basis. The abuse of power made the plaintiff feel not only worthless after all the abuse, it created a direct impact on the plaintiffs health.

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT    WRONGFUL TERMINATION    HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION     RETALIATION   7

24. The Plaintiff asserts that their termination on September 24, 2021, was wrongful and based on multiple violations, including those under the Civil Rights Act, wrongful termination laws, hostile work environment regulations, retaliation and whistleblower protection statutes. Hovan Asdourian's actions throughout this period demonstrate a clear abuse of power and exploitation of the Plaintiff's probationary position. It is evident that the termination was unjust and motivated by retaliatory actions against the Plaintiff for standing up against unethical behavior and discriminatory practices within the workplace creating a hostile work environment. As such, the Plaintiff is seeking legal recourse to address these violations and obtain redress for the harm inflicted upon them by Asdourian's abuse of power and authority.

25. Before the Plaintiff refused to participate in Asdourian's personal business, they received no negative work performance reviews and were not notified of any poor performance during their probationary period. Exhibit E showcases a message from a Senior U.S. Department of Commerce supervisor of the Design and Building Team who has been with the agency over 20 years, commending the Plaintiff's outstanding and proficient work performance, stating, "Arjun, you gave a great update about the upcoming webinar". Additionally, the Plaintiff received multiple thank-you emails from agency clients expressing appreciation for the plaintiff's work, with comments such as "Hi Arjun. This is so helpful." Exhibit F and Exhibit G. These positive performance evaluations and expressions of gratitude from supervisors and clients further reinforce the Plaintiff's competence and effectiveness in their role. It is evident that the Plaintiff's refusal to engage in personal business matters with Asdourian was not a result of poor performance but rather a commitment to upholding professional standards and agency policies. Thus, their subsequent wrongful termination was unwarranted and unjustifiable. The positive reviews from clients are two days prior to plaintiffs wrongful termination.

26. After refusing to partake in Asdourian's personal business, the Plaintiff received two separate letters alleging a decline in the value of their work. Despite being promised further clarification on this matter, the Plaintiff was terminated before any such meeting could take place. Prior to this termination, the Plaintiff had conducted several formal presentations to audiences of over 100 team members, receiving commendation from Senior Department of Commerce officials for their excellent presentation skills. However, following a practice presentation given to Asdourian, he abused his power by sending an email

THIRD AMENDED COMPLAINT    CIVIL RIGHTS ACT    WRONGFUL TERMINATION    HOSTILE
WORK ENVIRONMENT    WHISTLEBLOWER PROTECTION VIOLATION    RETALIATION    8

as part of a plan to discredit the Plaintiff after they refused to engage in illegal activities contrary to agency policy. This sequence of events suggests that the criticism of the Plaintiff's work performance was unjustified and motivated by retaliatory actions taken by Asdourian. The Plaintiff's consistent track record of delivering successful presentations and receiving positive feedback further underscores the baseless nature of the allegations made against them. It is evident that the termination was not based on any genuine performance issues but rather a result of Asdourian's abuse of power and vindictive behavior towards the Plaintiff. Despite the Plaintiff providing updates on agency-related work progress, Asdourian failed to acknowledge these efforts, instead prioritizing his personal demands, including the inappropriate directive to "take care of" his son Ross, which further deviated from the agency's policies and ethical standards. This behavior underscores a pattern of neglecting professional responsibilities in favor of personal interests, severely impacting the Plaintiff's work environment and mental well-being.

27. Plaintiff made several attempts to reach out to Human Resources in order file a complaint regarding the comments and ongoing daily harassment that were made by Asdourian about the Plaintiff's race and complaints regarding the harassment received due to Asdourian asking for masks but received no response. More specifically on September 13, 2021 and September 16, 2021, Plaintiff reached out the Shannon Lacy in Human Resources and received no response. [Exhibit I] Lack of response by Human Resources as recourse for the Plaintiff is a violation of agency policy.

28. Agency supervisor Asdrourian and son, Ross, continued to reach out to Plaintiff asking for more shipments and to further their business. Plaintiff refused Asdourian's son saying that "I do not have the time nor am I allowed to do this."

29. Shortly after the refusal of Asdourian's son's request, Plaintiff was terminated from his role.

30. Plaintiff filed a complaint with the Equal Employment Opportunity Commission following his termination. Plaintiff has also exhausted the remedies suggested to him by the EEOC. [EEOC Number: 570-2022-00827X]

31. After EEOC and the Department of Commerce started an internal investigation Chicago Director Hovan Asdourian retired abruptly without notice to other colleagues.

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   9

32. Plaintiff has suffered emotional and monetary losses due to his wrongful termination. He has not been able to gain employment with the government, agency in trade, or outside businesses because of this emotional stress and toll.

### Claim 1

### WRONGFUL TERMINATION

33. The Plaintiff hereby references and incorporates paragraphs 1 through 32 as though set forth herein at length.

34. Under Title VII of the Civil Rights Act of 1964, the federal government is prohibited to fire someone from their employment on the basis of "race, color, sex, or national origin." 42 U.S.C §2000e-16 Title VII also provides for a "judicial scheme for redress of federal discrimination." *Brown v Gen. Servs Admin.,* 425 U.S. 820 (1976)

35. Along with Title VII, the Civil Service Reform Act ("CSRA") has purported another remedial scheme in which federal employees can challenge discriminatory actions from their supervisors. *Manage v United States,* 529 F.3d 1243 (9th Cir. 2008); 5 U.S.C. §2302. The CSRA lists possible prohibited personnel changes as "disciplinary or corrective action.....a transfer or reassignment", or a "any other significant changes in duties, responsibilities, or working conditions." 5 U.S.C §§ 2302(a)(2)(A)(iii), (iv), (xiii).

36. Additionally, the Ninth Circuit dealt with wrongful termination under the CRSA and whistleblower protection in *Kerr v Jewell*, where the court prohibited federal employees from taking personnel actions based on information gained from the employee where they reasonably believe there was either a violation of any law or an abuse of authority. *Kerr v Jewell,* 836 F. 3d 1048, 1049 (9th Cir. 2016)

37. The plaintiff Arjun Bakshi incurred on going harassment and finally wrongful termination by the defendant, his former employer and supervisor Hovan Asdourian which after a internal investigation led to the supervisor Hovan Asdourian abruptly resigning. The plaintiff claims that during his probationary period, he was subjected to constant harassment and was compelled to follow directions from his supervisor that were extremely inappropriate. Specifically, the plaintiff mentions being harassed with persistent calls and demands to attend to personal matters that benefit from government employment, which directly goes against the agency's standard of conduct. The defendants constant harassing calls were in the

form of "did you call Ross?" "make sure you take care of him" "Do everything he says". When the plaintiff refused to continue following these directions, which were unethical and against the agency's policies on personal business matters, he was terminated from his position. This situation raises several legal issues, including workplace harassment when the supervisor called the Plaintiff and said "you Indians are all slaves and need to follow what I say". Wrongful Termination: The plaintiff's claim of wrongful termination, is in the form retaliation for refusing to perform actions that the employee deemed unethical and against policy. Firing someone for refusing to perform illegal acts, or in retaliation for objecting to or refusing to participate in activities are unethical and against policies, this constitutes wrongful termination.

38. As a direct and proximate cause of the Defendant's wrongful and discriminatory actions, the Plaintiff suffered losses in the form of loss wages and non-economic damages and defamation as the supervisor wrongfully terminated the plaintiff.

39. The plaintiff in this situation has grounds for a wrongful termination lawsuit, as well as claims of workplace harassment and discrimination based on race. The plaintiff's termination following complaints to HR about ongoing harassment from the supervisor suggests retaliation, which is illegal under laws. The racial comments made by the supervisor are not only inappropriate and offensive but also create a hostile work environment, which is prohibited by law. Such comments have had serious effects on the plaintiff's mental and physical health, as indicated by the plaintiff's experience of stress. After complaining to HR on more than one occasion plaintiff was terminated.

40. Ongoing racial comments "all Indians are slaves" "you all smell like curry" There were many age discrimination comments such as "you will never reach that age" and "you will be dead before then" put a extreme depression on the plaintiff, which has led to crucial health concerns.

41. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and/or omissions described herein as well as punitive damages where applicable to deter the Defendant from similar future misconduct.

42. The Supreme Court also established in *Faragher v City of Boca Raton*, that Plaintiffs may only bring suit under Title VII if there was a "tangible employment action" that followed the alleged discriminatory conduct. *Faragher v City of Boca Raton* 524 U.S. 775 (1998) The Court also established that an employer

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   11

will be held vicariously liable for a supervisor's action if 1) the employer could have reasonably foreseen the conduct and 2) it is fair for the employer to bear the associated risk. *Faragher v City of Boca Raton* 524 U.S. 775 (1998) In the present issue the Defendant meets both requirements, as it is reasonably to foresee that racial discrimination could be present in the work place and that because of supervisor-employee relationship between the Plaintiff and Asdourian, it is fair that the Defendant bear the risk. *Faragher v City of Boca Raton* 524 U.S. 775 (1998)

43. In the instant matter, the Plaintiff has clearly establishes an employee / employer relationship as one of the necessary elements for a claim of wrongful termination. .

44. Plaintiff was fired from his employment immediately after declining to work with agency supervisor Asdourian and his son and had made an several attempts to discuss the matter with the proper internal HR representative. [Exhibit I]

45. Accordingly, the Defendant violated the CRSA in practicing prohibited personnel practices due the Plaintiff refusing to engage in activity that was unlawful and for claims brought in Claim 3 of this complaint.

46. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totaling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

47. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

**Claim 2**

**HOSTILE WORK ENVIRONMENT**

48. The Plaintiff hereby references and incorporates paragraphs 1 through 32 as though set forth herein at length.

49. To allege a hostile work environment claim, a plaintiff must show: "(1) he belongs to a I protected group: (2) he was subjected to unwelcome harassment: (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Harris v Forklift Systems* 510 U.S. 17 (1993)

50. In the instant matter, there is no dispute that the Plaintiff belongs to a protected group as an individual of Asian / Indian national origin.

51. The ongoing racial harassment and the perpetuation of a hostile work environment constantly and on a daily basis by the agency supervisor Hovan Asdourian with ongoing severe and persistent discriminatory conduct based on plaintiff's race, by the agency supervisor Hovan Asdourian "Indians are all slaves" The nature of the harassment I plaintiff Arjun Bakshi faced is not only offensive and unwelcome but has also created an intimidating, hostile, and utterly unbearable work environment, significantly affecting my psychological well-being and my ability to perform my job duties. Below are specific instances of the discriminatory behavior I have been subjected to: Racial Stereotypes and Insults: On numerous occasions, Defendant Hovan Asdourian made derogatory and unsolicited comments about my ethnicity, including saying, "Indians sell fake things" and mocking my cultural food with statements like, "when you take Ross out, you will feel at home with your smelly curry food." These remarks are not only deeply insulting but also propagate harmful stereotypes that degrade my cultural background and heritage. Racial Comments Towards Others: The Agency supervisor Hovan Asdourian had set the tone for racial comments and slurs to be okay. Which made it go against agency policy. The environment of tolerance for racial insensitivity is further demonstrated by comments made about other races, including remarks

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   13

about black individuals such as, "hahaha,Don King," made by other employees. This kind of language fosters a culture of discrimination and is indicative of the systemic

racial bias prevailing within the agency and is against the law and against agency policy. Exhibit J

52. The comments made by Asdourian to the Plaintiff can clearly fit a pattern of racial discrimination as it is seen to be spread throughout unit's workplace attitude. Being surrounded by a constant bombardment or racially motivated remarks on a daily basis, were seen as severe and pervasive to amount to a hostile work environment.

53. Threatening and Coercive Behavior: The agency supervisor Hovan Asdourian has repeatedly made it clear that his demands are to be prioritized above all else, with statements like, "Every time I get a hold of you, drop everything. I don't care if you are talking to my boss, I come first no matter what," and, "Do everything I say no matter what and everything will be fine."

These commands are not only unreasonable but are delivered with an implicit threat, suggesting that non-compliance would result in negative consequences for me. Such behavior is coercive and contributes further to the hostile work environment.

54. This ongoing harassment has been reported to Shannon Lacy human resources department on September 13 and 16, 2021, yet the response has been grossly inadequate, with no substantial action taken to address the misconduct or to protect me from further harassment. Exihibit I. The conduct described herein is a clear violation of the Civil Rights Act of 1964, Title VII, as it pertains to employment discrimination and the creation of a hostile work environment based on race. Plaintiff's direct agency supervisor Hovan Asdourian created a tone and environment that allowed for certain remarks to be made that were detrimental to minorities working within the agency and potential clients. Exhibit J. The harassment was clearly based on the Plaintiff's membership in a protected group and the constant and continuous incorporation of racially biased references was brought up on such a regular and recurring basis that it had a substantial pervasive impact on the ability of the Plaintiff to regularly perform and fulfill their duties of employment without suffering from the constant burden of this racially hostile and biased work environment.

55. Based on the foregoing, it is clear that the Plaintiff suffered discrimination on the basis of race and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. $$ 2000e et seg., for

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   14

employment discrimination on the basis of race, color, religion, sex, or national origin, or retaliation for exercising rights under the same.

56. As a direct cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totaling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

57. The Plaintiff is seeking compensatory damages for the breach(es) complained of in the I instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

58. The plaintiff has been affected on a daily basis with comments like "whats up with the stupid dot on your forehead" These kinds of comments are prohibited and against the law and against agency policy.

**Claim 3**

**WHISTLEBLOWER PROTECTION VIOLATION**

59. The Plaintiff hereby references and incorporates paragraphs I through 32 as though set forth herein at length.

60. As previously stated, the CRSA clearly prohibits retaliation from whistleblower actions against the employer. 5 U.S.C. §2302

61. Additionally the Ninth Circuit stated that the proper redress for whistleblower protection violations was assigned under the CRSA. *Rivera v United* States, 924 F.2d 948, 952-54 (9th Cir. 1991) The Ninth Circuit provided that the federal employee go through mechanisms such as the EEOC and the follow with appeals accordingly, which the Plaintiff has done. *Rivera v United* States, 924 F.2d 948, 952-54 (9th Cir. 1991)

62. Here, there were numerous occasions where supervisor of the Plaintiff asked the Plaintiff to send him large numbers of KN9S masks and diabetic socks personally and not in relation to the regular office work of the Plaintiff which is an explicit violation of the policies of the Defendant's organization as a whole.

63. The Plaintiff reported these claims to Human Resources on numerous occasions in addition to the consistent stream of racially biased remarks made by the Defendant on countless instances and no action was taken to reprimand the supervisor complained of in any manner whatsoever.

64. Instead, Asdourian deliberately did not sign Complainant's performance review at the end of the fiscal year. Complainant asserts that Asdourian did not do so because the Plaintiff would have met all of the performance metrics and because there were no complaints about his performance and the Plaintiff received a notice removing him from Federal Service during his probationary period.

65. Based on the foregoing, the Plaintiff has established a prima facie case of whistleblower retaliation where the burden of proof will be on the Defendant to justify their adverse action taken against the Plaintiff throughout the course of litigation.

66. As a direct and proximate cause of the misconduct complained of herein, the Plaintiff has lost employment unjustly and without justification in violation of law thereby warranting the issuance of compensatory damages totalling the amount of backpay and front pay as well as any and all other relief deemed necessary and applicable including but not limited to punitive damages and injunctive relief reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

67. The Plaintiff is seeking compensatory damages for the breaches) complained of in the instant matter for damages resulting directly and proximately from the acts and / or omissions described herein as well as punitive damages where applicable to deter the Defendant from this sort of misconduct in the future.

68. The case at hand revolves around egregious abuse of power and authority by the defendant, leading to the wrongful termination of the plaintiff. This is not merely a matter of employment dispute but a fundamental violation of the plaintiff's rights and dignity. Firstly, it is crucial to address the abuse of power and authority exhibited by the defendant. Employers hold a position of trust and responsibility towards their employees, and they are obligated to wield their authority ethically and fairly. However, in this case, the defendant flagrantly abused their power by coercing the plaintiff into actions that went against agency policy, particularly amidst the sensitive backdrop of Covid-19 regulations. Plaintiff was forced to meet the agency supervisors son Ross, and "take care of him" "give him whatever he wants"

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   16

By forcing the plaintiff to contravene established rules, the defendant demonstrated a callous disregard for both the plaintiff's well-being and public health protocols. The plaintiff was extremely worried of a life and death situation being Insulin Dependent Diabetic and not able to go home to his senior citizen parents during the Covid-19 pandemic. Be forced into meeting in public for the agency's supervisor Asdourian and his son Ross.  Moreover, the defendant's exploitation of their authority is further exemplified by the coercion of the plaintiff to accommodate the agency supervisor's son. Not only was the plaintiff compelled to entertain the supervisor's son, but they were also unfairly burdened with covering the expenses for his desires. Such behavior is not only unethical but also an abuse of the plaintiff's resources and goodwill. Most damningly, the termination of the plaintiff immediately following their complaints underscores the vindictive nature of the defendant's actions. Instead of addressing the legitimate concerns raised by the plaintiff, the defendant chose to retaliate by terminating their employment. This not only silences dissent but also sends a chilling message to other employees about the consequences of speaking out against injustice. In conclusion, the defendant's actions represent a clear abuse of power and authority, culminating in the wrongful termination of the plaintiff. Such behavior cannot be tolerated in any civilized society, and justice demands that the defendant be held accountable for their reprehensible actions. The plaintiff deserves restitution for the injustices they have suffered, and it is imperative that the court delivers a swift and decisive verdict in their favor.

## **CLAIM 4**

## **RETALIATION**

1. The Plaintiff hereby references and incorporates paragraphs 1 through 32 as though set forth herein at length.

2. The Plaintiff alleges that through the means of firing him for not adhering to Asdourian's requests to engage in activity that would be beyond the scope of his employment, he was fired and therefore has a claim against the Defendant per retaliation rules.

3. Furthermore, the Ninth Circuit affirmed that the appropriate recourse for addressing whistleblower protection infringements was delineated within the Civil Rights Act (CRSA). As elucidated in *Rivera v. United States* (924 F.2d 948, 952-54, 9th Cir. 1991), the Ninth Circuit stipulated that federal employees

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   17

1    ought to pursue redress through channels such as the Equal Employment Opportunity Commission (EEOC)

2    and subsequently proceed with appeals as warranted. The plaintiff in this case has adhered to these

3    prescribed procedures.

4.   Plaintiff additionally addressed agency supervisor Asdourian's action to Human Resources few months

5         prior to termination and again right before the plaintiff's termination but was ignored and not given the

6         proper diligence afforded to him by company policy. [Exhibit I ]

5.   The consistent and daily engagement in verbal abuse by Agency Supervisor Asdourian is utterly

8         reprehensible and completely unacceptable. Such behavior not only undermines the dignity and respect

9         owed to every individual but also creates a toxic work environment that is detrimental to the well-being and

10        productivity of all involved. Such abusive conduct,like calling and making racial comments to the the

11        plaintiff "all Indians are slaves" "Does your family wear that shit dot on their forehead"

6.   The actions of agency supervisor Hovan Asdourian, in coercing illegal requests against the will of the

13        plaintiff by prioritizing personal favoritism over professional duty, are utterly reprehensible. Indulging in

14        nepotistic tendencies to "take care of his son" and "give him whatever he wants," Asdourian exhibits a

15        flagrant abuse of power. Such behavior not only undermines the integrity of the agency but also jeopardizes

16        the rights and interests of those affected by his actions.

7.   It is with great concern and distress that ongoing harassment inflicted upon the plaintiff by Agency

18        Supervisor Asdourian. Despite numerous attempts to address and resolve this matter internally, by

19        contacting HR the harassment persists, creating an intolerable work environment. Asdourian's behavior

20        towards me has been consistently hostile, demeaning, and unprofessional. This harassment has taken

21        various forms, including verbal abuse, unwarranted criticism, and deliberate attempts to undermine my

22        work and credibility within the agency. Making sexist and racial comments  "there are to many Indian

23        males you are all faggots" "Indians are pieces of shit" Not only has this harassment caused me significant

24        emotional distress, but it has also adversely impacted my ability to perform my duties effectively.

25        The constant fear of retaliation and humiliation has created a toxic atmosphere that has no place in any

26        workplace. I have made every effort to address this issue through appropriate channels within the agency,

27        but unfortunately, no satisfactory resolution has been reached. No one should be subjected to such

28   THIRD AMENDED COMPLAINT    CIVIL RIGHTS ACT    WRONGFUL TERMINATION    HOSTILE
     WORK ENVIRONMENT    WHISTLEBLOWER PROTECTION VIOLATION    RETALIATION    18

unacceptable behavior, and it is imperative that steps are taken to prevent similar instances of harassment in the future.

8. The agency supervisor Hovan Asdourian retaliated against the plaintiff by unjustly by wrongfully terminating them immediately after the employee reported instances of workplace harassment, displaying a clear abuse of power and a blatant disregard for employee rights and workplace fairness.

9. For fairness and respect in the workplace, it is imperative to denounce the reprehensible behavior of agency supervisor Asdourian, who shamefully exploited religion as a tool for discrimination and harassment. Using derogatory remarks about cows and pigs to mock and belittle the plaintiff is not only offensive but also a blatant violation of their fundamental rights and dignity as a human being."You people are all vegetarians, I am going to stick a steak down your throat and pig up your ass" "hahahha" "what did you eat at the Indian restaurant you met my son at?" "smelly dirty leaves". Such behavior is not only morally abhorrent but also legally unacceptable. It creates a toxic environment that undermines the principles of equality, respect, and professionalism that should govern any workplace. No individual should ever be subjected to ridicule or humiliation based on their religious beliefs or cultural practices.

10. Agency supervisor Asdourian's actions are not only harmful to the plaintiff but also reflect poorly on the organization as a whole. It is the responsibility of leadership to foster an inclusive and respectful environment where all employees feel valued and supported regardless of their background or beliefs.

11. After the EEOC and DOC internal investigation the agency supervisor Asdourian, abruptly took a early retirement without informing any other colleagues from the agency.

12. Based on the foregoing, the Plaintiff has established a prima facie case of whistleblower retaliation where the burden of proof will be on the Defendant to justify their adverse action taken against the Plaintiff throughout the course of litigation.

**JURY TRIAL DEMANDED**

13. The Plaintiff hereby demands a trial by jury with regards to any and all genuine disputes of material facts pertaining to the instant matter.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests as follows:

1. COMPENSATORY DAMAGES in an amount to determined in a trial by jury.

2. PUNITIVE DAMAGES in an amount to be determined in a trial by jury.

3. INJUCTIVE RELIEF reinstating the employment of the Plaintiff to any other office location as well as the cleaning of the Plaintiff's record on their personal SF-50 form.

4. COSTS AND FEES associated with prosecuting the instant matter.

5. ANY AND ALL OTHER RELIEF DEEMED NECESSARY.


Dated March 7 , 2023.



Arjun Bakshi
Pro Se Plaintiff

THIRD AMENDED COMPLAINT   CIVIL RIGHTS ACT   WRONGFUL TERMINATION   HOSTILE
WORK ENVIRONMENT   WHISTLEBLOWER PROTECTION VIOLATION   RETALIATION   20

# EXHIBIT A

*U.S. Export Assistance Center*
*3300 Irvine Avenue, Suite 307*
*Newport Beach, CA 92660*



**U.S.**
**COMMERCIAL**
**SERVICE**
United States of America
Department of Commerce

*www.BuyUSA.gov/socal/nb*
*Tel. (949) 660-1688*
*Fax (949) 660-1338*

**JANUARY 2003**

<u>INTERNATIONAL TRADE INTERNSHIP CERTIFICATION</u>

Mr. Arjun Bakshi has completed a full time comprehensive and in-depth international trade internship program, from February 21, 1997 until July 21,1997, at the Orange County Export Assistance Center. This domestic field office of The Commercial Service is the export promotion and facilitation unit within the International Trade Administration of the United States Department of Commerce.

During the time of the internship, Mr. Bakshi was employed in the domestic and international marketing arena. He successfully became familiarized with the task responsibilities of outreach and promotion of Orange County firms' export endeavors. Please see the following highlights:

> ➢ Research and identify the top export countries for many different products and services.

> ➢ Research and identify target countries' market potential, demand trends, size, competition, market access, regulations and standards, distribution practices, best sales prospects, and end users.

> ➢ Facilitate international advertising of many different products and services.

> ➢ Implement agent and distributor searches for international markets.

> ➢ Research and identify potential international buyers, importers and distributors.

> ➢ Implement primary market research for unique products and international markets.

> ➢ Coordinate international travel for Trade Specialists and international visitors.

> ➢ Coordinate domestic and international trade show events.

> ➢ Composed sales and marketing letters including international correspondence; marketing and sales research utilizing electronic databases, E-Mail, internet and WinFax Pro; PC applications use included Word, Excel, Lotus Notes, data transfer and manipulation in various formats.

> ➢ Conduct international background investigations of international customers.

Working under the immediate supervision of International Trade Specialist Rizwan Khaliq, Mr. Bakshi's efforts and accomplishments in our office were executed to our full satisfaction. He also fulfilled his responsibilities and tasks demonstrating precision and independence.

We wish Mr. Bakshi all the best personally and much success in his career. I believe he will be an asset to any company with which he is associated. If you have any questions regarding Mr. Bakshi, please contact our office at (949) 660-1688.

United States Export Assistance Center

Richard M. Swanson
Director

*"Serving the needs of the Southern California trade community"*

EXHIBIT

# United States Department of Commerce

## CERTIFICATE OF TRAINING

### Arjun Bakshi

IS HEREBY RECOGNIZED FOR SUCCESSFUL COMPLETION OF

THE INTERNATIONAL TRADE INTERNSHIP PROGRAM
AT THE NEWPORT BEACH EXPORT ASSISTANCE CENTER



Richard M. Swanson, Director

**January 2003**

FORM CD-33 (REV. 11-97)



| | |
|---|---|
| **U.S.-ASEAN Business Council, Inc.** | 1400 L Street, N.W.<br>Suite 375<br>Washington, D.C. 20005-3509<br>202-289-1911<br>Fax: 202-289-0519 |

July 1, 1997

Mr. Paul Tambakis
Director
U.S. Department of Commerce
Orange County EAC
Newport Beach, CA

Dear Paul:

On behalf of the U.S.-ASEAN Business Council, I want to thank you for all your efforts in organizing the Irvine leg of the 1997 U.S. Ambassadors Tour. By all accounts, our stop in Southern California was a great success. You and your staff — especially, Mr. Riz Khaliq and your assistants Arjun, Alex, and Tony — were invaluable in pulling together the Irvine seminar day. I know that Mr. Khaliq worked above and beyond the call of duty to recruit participants and to arrange the one-on-one meetings for the Senior Commercial Officers.

Thanks to you, this tour was our best ever. It was also a key part of our year long celebration of ASEAN's 30th anniversary. The tour program has now brought home the message of ASEAN's importance to the U.S. economy by reaching over 10,000 American executives and workers, visiting more than 20 cities, and bringing our chief envoys in Southeast Asia together with the state and local government leaders and the media.

The Ambassadors and Commercial Officers learned a great deal from the opportunity to meet and interact with the local business community. The information they gained during the

Mr. Paul Tambakis
July 1, 1997
Page Two


seminar day will serve our Ambassadors and Senior Commercial Officers well as they continue to promote U.S. business interests in their respective countries.

    Thank you again for your hard work.

                Sincerely yours

                Ernest Z. Bower
                President


cc:   Ms. Marjory Searing, US FCS
      Ms. Alice Davenport, US FCS
      Mr. Rizwan Khaliq, US FCS/Orange Country
   ✓ Arjun Bakfhi
      Tony Michalski
      Alex Mills

# EXHIBIT B

 Gmail

*EXHIBIT B*

Arjun Bakshi <oobakshi@gmail.com>

---

## Would like to connect with you

6 messages

---

**Hovan Asdourian**                     Thu, Jan 7, 2021 at 7:42 AM
To: Arjun Bakshi <

Hi Arjun,

I would like to connect with you late this afternoon (Thursday, Jan. 7) or this Friday morning.

Let me know and provide me with 2 potential times so I can email you a videoconferencing link using Microsoft Teams.
 Thanks.


**Kind Regards,**


**Hovan Asdourian**

Director, U.S. Commercial Service- Chicago

U.S. Department of Commerce|International Trade Administration



E-mail:

C



---

**Arjun Bakshi** <                    Thu, Jan 7, 2021 at 12:11 PM
To: Hovan Asdourian <

Hello Mr. Asdourian,

I will be ready in the next 30 minutes. Which is 2:30 CST your time. I am very flexible for tomorrow if that's better for you.

My apologies for the delayed reply,

Sincerely,
Arjun.

*Exhibit B*

**Arjun Bakshi**
Cell: ▓▓▓▓▓▓▓▓

The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

 Please consider the environment before printing this email or any attachments therein.

[Quoted text hidden]

---

**Hovan Asdourian** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓    Thu, Jan 7, 2021 at 12:23 PM
To: Arjun Bakshi ▓▓▓▓▓▓▓▓

Arjun,

Are you free between 3-4 pm your time today (pacific Time)?

[Quoted text hidden]

---

**Arjun Bakshi** ▓▓▓▓▓▓▓▓▓▓    Thu, Jan 7, 2021 at 12:27 PM
To: Hovan Asdourian ▓▓▓▓▓▓▓▓▓▓

Hello Mr. Asdourian,

Yes, sir. Confirmed. I will be ready by 3 pm (Pacific Time) today.

Sincerely,
Arjun

---

**Arjun Bakshi**
Cell: +1 310.770.3318

The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

 Please consider the environment before printing this email or any attachments therein.

[Quoted text hidden]

---

**Hovan Asdourian** ▓▓▓▓▓▓▓▓▓▓▓▓▓    Thu, Jan 7, 2021 at 12:35 PM
To: Arjun Bakshi ▓▓▓▓▓▓▓▓

I will email you Outlook invite with link for Microsoft Teams videoconferencing. Talk later today.

[Quoted text hidden]

---

**Arjun Bakshi** ▓▓▓▓▓▓▓▓▓▓    Thu, Jan 7, 2021 at 12:38 PM
To: Hovan Asdourian ▓▓▓▓▓▓▓▓▓▓

Thank you, Mr. Asdourian,

Exhibit B

Looking forward to our video call.

Sincerely,
Arjun

**Arjun Bakshi**
Cell: 

The foregoing e-mail transmission and all attachments are privileged, confidential, proprietary, work product and/or attorney-client privileged. Any dissemination of the foregoing transmission/attachments to a recipient other than that intended herein is strictly prohibited and the parties responsible for such conduct will be held strictly liable.

Please consider the environment before printing this email or any attachments therein.

[Quoted text hidden]

EXHIBIT C

EXHIBIT C



**Hovan Asdourian** ›
Status unknown

Chat          Files          More

June 22, 1:44 PM

Hope your day is going well. Had a great intro call with Jenny May - Global China Team Leader, she is here to help our team with any China entry barriers - IP issues

Will share with team

June 25, 8:15 AM

is your cell ████████ ████ and your ████████@████ ██ correct

will be making an e-introduction.

# EXHIBIT D

 Gmail

Exhibit D

Arjun Bakshi <oobakshi@gmail.com>

## e-introduction

**Hovan Asdourian** <██████@█████████>                    Fri, Jun 25, 2021 at 8:37 AM
To: oobakshi@gmail.com, Ross Asdourian ████████@████████

> Arjun Bakshi meet my son Ross
> Arjun's cell - ████████
> Ross's cell ████████
>
>
> Regards,
>
> Hovan Asdourian
> ████████

# EXHIBIT E



# EXHIBIT F



# EXHIBIT G



# EXHIBIT H

Exhibit A



EXHIBIT I

Exhibit II



Exhibit II



4:07

**Shanen Lacy** ›
Status unknown

Chat    Files    More

September 16, 8:12 AM

Thank you!!!

September 16, 10:48 AM

Hi Ms. Lacy, if you have a min, I need to discuss with you some stuff going please, I know you have a lot going

September 16, 12:52 PM

Hi Arjun, my day took an unexpected turn. We have two employees retiring this Friday. So, I need to take care of them immediately to make sure they are cleared and taken care of through their out as

EXHIBIT  J

**4:26**

**Da Bears!** ›
7 participants

Chat          Files          More

September 10, 6:43 AM

Godfrey A.

Kyungsoo- is that office voicemail for you? The man's accent makes it sound as Dan Kim or Don King...

Andrey P.

I heard Dan Kim with an accent in it haha

Haley M.

hahaha, Don King 😂

😂 1

Kyungsoo K.

Oh man......