FILED

2024 APR -8 AM 10:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
SANTA ANA

BY [signature]

Arjun Bakshi
oobakshi@gmail.com
4671 Ranchgrove Drive
Irvine, CA 92604
(310) 770 – 3318
Plaintiff in Pro se

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISON**

| | |
|---|---|
| ARJUN BAKSHI,<br>Plaintiff(s),<br>vs.<br>GINA RAIMONDA, SECRETARY U.S. DEPARTMENT OF COMMERCE,<br>Defendant. | Case No.: 8:22-cv-02170-MRA-DFM<br>PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS<br>**Hearing Date: June 27, 2024**<br>**Hearing Time: 1:30pm**<br>**Judge: Honorable Monica Ramirez Almadani**<br>**United States District Judge**<br>**Place: 10B** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Pro se Plaintiff, Arjun Bakshi, respectfully submits this opposition memorandum in response to Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on January 24, 2024. Plaintiff brings this action seeking redress for the wrongful termination, hostile work environment, retaliation, and lack of whistleblower protection during their employment by the Defendant. As demonstrated herein, Defendant's Motion to Dismiss lacks merit and should be denied by this Honorable Court.

In support of their Motion to Dismiss, Defendant alleges that the Plaintiff's complaint

fails under Fed. R. Civ. P. 12(b)(1) and under Fed. R. Civ. P. 12(b)(6). However, as detailed below, Plaintiff's complaint satisfies all applicable legal standards and sets forth viable claims for relief under the law. Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and allow this matter to proceed to discovery and trial on the merits.

This memorandum is organized as follows: Part II provides an overview of the legal standard governing motions to dismiss. Part III sets forth the relevant factual background of the case. Part IV presents legal arguments in opposition to Defendant's Motion to Dismiss, addressing each of Defendant's as grounds for dismissal. Finally, Part V concludes by urging this Court to deny Defendant's Motion to Dismiss and allow Plaintiff the opportunity to fully litigate their claims.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proof to establish its existence, as outlined *in Sopak v. Northern Mountain Helicopter Serv*., 52 F.3d 817, 818 (9th Cir. 1995). Such a motion can challenge jurisdiction facially, questioning the legal sufficiency of the claim, or factually, disputing the adequacy of the jurisdictional facts, per *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial challenge, the court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor, following the principle articulated in *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citation omitted). On the other hand, a factual Rule 12(b)(1) challenge permits the court to consider matters of public record beyond the complaint without converting the motion into one for summary judgment, and the court need not assume the truthfulness of the plaintiffs' allegations, per *White*, 227 F.3d at 1242.

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a court has the authority to dismiss a complaint if it fails to state a claim upon which relief can be granted. Dismissal may stem from either the absence of a legally recognizable theory or insufficient factual allegations supporting such a theory, as outlined in *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To withstand a motion to dismiss, a complaint must present factual content that, taken as true, allows for a plausible claim for relief, as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere recitation of legal elements is inadequate, and conclusory statements do not fulfill the plaintiff's obligation to establish grounds for relief, as emphasized in *Twombly*, 550 U.S. at 555. Allegations must elevate the claim beyond speculation, as held in *Twombly*. When considering a motion to dismiss, courts accept all well-pleaded factual allegations as true and construe them in the light most favorable to the non-moving party, following *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008). The court's review is limited to the pleadings, exhibits referenced in the complaint, and matters appropriately subject to judicial notice, per *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. STATEMENT OF THE FACTS

Plaintiff's first job in international trade was an internship within the U.S. Department of Commerce – ITA- U.S. Commercial Service in 1997 at the age of 22. [Exhibit ___ in TAC] Since then plaintiff has continued to work in different capacities in the realm of international commerce and international commercial trade. During his internship, with the same agency in which Plaintiff was wrongfully terminated from he gained experience in the U.S. Department of Commerce's International Trade Administration in products and services. During this internship, Plaintiff was a lead assistant under the purview of the President of the U.S. ASEAN Business Council, Ernie Bower. [Exhibit J in TAC] After Plaintiff's internship in 1997, he continued his work within the California Trade & Commerce Agency and worked closely with the U.S. Commercial Service. Plaintiff has been in Global Trade for over 20 years. Plaintiff was hired on

April 12, 2021 as a International Trade Specialist. Plaintiff was a direct report of Department of Commerce Chicago Director Hovan Asdourian. Chicago Director Hovan Asdourian is an actor of the Department of Commerce as he was hired as a International Trade Supervisor for at least 6 years. Plaintiff was terminated on September 24, 2021 and is now asserting that he was wrongfully terminated based on the following facts. Before refusing to partake in Asdourian's personal business, Plaintiff received no negative work performance reviews and was not placed on notice of any poor work performance during his probationary period. On the contrary, Plaintiff got multiple positive remarks from different employees, higher level supervisors, and agency clients for outstanding performance within his duties. [Exhibit E,F,G in TAC] After refusing to partake in Asdourian's personal business, Plaintiff received two separate letters claiming that his work had declined in value. Plaintiff was told that he was going to receive more clarity on his declining work value, but was terminated before having that meeting. On January 7, 2021, the U.S. Department of Commerce, Chicago Director Hovan Asdourian initiated a video conference call, which he denies in the EEOC investigation report, by the Microsoft Teams Platform, which is against is agency policy. [Exhibit B in TAC] Yet, the Plaintiff submitted proof that the meeting occurred. [Exhibit B in TAC] On June 25th, Asdourian made harsh discriminative comments towards the Plaintiff constitutionally protected classes such as race, religion, and age continually creating a hostile work environment, which is against agency policy and the law. Plaintiff was also forced to give Asdourian his personal contact information to be contacted during work about non work related matters, disregarding a business inquiry made by the Plaintiff, which is against agency policy. [Exhibit A in TAC] Plaintiff, using the proper methods to file a complaint, made several attempts to reach out to Human Resources in order file a complaint regarding the comments and illegal demands of product shipment that were made by Asdourian about the Plaintiff's race and illegal demands but received no response. More specifically on September 13, 2021 and September 16, 2021, Plaintiff reached out the Shannon Lacy in Human Resources, again exhausting the proper procedure for filing a complaint and received no response. [Exhibit C and Exhibit D in TAC] On June 2, 2021, Asdourian in his capacity as a director within the Department of Commerce demanded that Plaintiff send him large quantities of products, such as KN95 masks and diabetic socks which Plaintiff had access to through contacts held prior to employment with the Department of Commerce, which against agency policy. Through verbal communication with Asdourian, it was clear that the products

were for his personal business. Asdourian also made multiple inquiries about the shipment information during work hours and via government platform, which is against agency policy. All shipping and purchases were made at the personal time and expense of the Plaintiff. On June 23, 2021 Asdourian asked Plaintiff to meet his Asdourian's son in Los Angeles in order to secure the masks and socks, which was against agency policy. This order and its shipment to Asdourian's son was not a regular conduct of Plaintiff's job duties as an International Trade Specialist. Plaintiff followed through with the demands for the delivery of this shipment out of fear of his direct boss, Asdourian, which is against agency policy. Asdourian verbally requested that his son be given a $700,000 credit for securing the sale of the masks and socks which Plaintiff refused. During a subsequent All-Hands Meeting, on December 29, 2021, employees were informed that new COVID-19 protocol prohibited them from conducting any in person meetings, which was against agency policy. Asdourian's son, Ross Asdourian, continued to reach out to Plaintiff asking for more shipment and further business through Plaintiff's previously held contacts, which was against agency policy. Plaintiff refused Asdourian's son saying that "I do not have the time nor am I allowed to do this." [Exhibit E] Shortly after the refusal of Asdourian's son's illegal forceful demand, Plaintiff was fired from his role. After denying Asdourian's illegal demands, Plaintiff reached out to human resources and was again ignored. Following this situation escalated and resulted in the Plaintiff's wrongful termination. Plaintiff was then told his only remedy was to file a claim through the Equal Employment Opportunity Commission. Plaintiff filed a complaint with the Equal Employment Opportunity Commission following his termination. [Exhibit F] Plaintiff has also exhausted the remedies suggested to him by the EEOC. [EEOC Number: 570-2022-00827X] After the Plaintiff filed a complaint with the EEOC, Chicago Director Hovan Asdourian retired abruptly without notice to other colleagues. Plaintiff is suffering severe emotional and monetary losses due to his illegal and wrongful termination. He has not been able to gain employment with the government, agency in trade, or outside businesses because of this severe emotional stress and toll which was accumulating during the ongoing hostile work environment perpetrated by Asdourian as an actor of the Defendant.

## IV. ARGUMENT

### A. Plaintiff's Wrongful Termination and Whistleblower Protection Violation Claims Are Not Preempted.

The Defendant claims that the Plaintiff's claims do not fall under the purview of Civil Service Reform Act ("CSRA"), which the Plaintiff argues is incorrect because the CSRA's remedial scheme does not apply to probationary employees. Additionally, the Plaintiff asserts that the whistleblower retaliation claims is protected beyond the scope CSRA. Under the CSRA prohibited practices include "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. §§ 2302(a)(2)(A)(iii), (iv), (ix), (xii) According to the facts in the complaint, the Plaintiff asserts that during his time as International Trade Specialist he refused to be part of his direct superior's personnel business. After refusing and attempting to notify human resources about Asdourian's behavior, the Plaintiff experienced a termination from his job duties and was not given any reason for termination. Using the language of the CSRA, this is a significant change in duties, responsibilities, and working condition as the Plaintiff was no longer allowed to continue his job, however it does not preempt his claim because he was in his probationary period of employment and therefore a separate class of employee. Additionally, the Plaintiff asserts that he was terminated as a result of whistleblower retaliation and not for political differences, which the CSRA does not cover. *Murray v Mayo Clinic,* 934 F.3d 1101 (2019) (see also *Fisher v United States,* 425 U.S. 391 (1976); *Kirkendall v Department of Army*, 479 F.3d 830 (2007); *Humphries v CBOCS West,*474 F.3d 387 (2008); *Horton v Department of Navy,* 66 F.3d 279 (9th Cir. 1995)) The Defendant claims that the Plaintiff's complaint are rooted from state law and therefore should be preempted. Plaintiff alleges that Asdourian took prohibited personnel action, which is actionable exclusively under the CSRA. 5 U.S.C. § 2302(b)(8) (prohibiting federal employees from taking personnel actions "because of … any disclosure of information by an employee … which the employee … reasonably believes evidences … (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement [or] an

abuse of authority"); see also *Kerr v. Jewell*, 836 F.3d 1048, 1049 (9th Cir. 2016); *Thomas v. Sec'y of the United States Dep't of Veterans Affs*., 2021 WL 3468937, at *2 (C.D. Cal. Mar. 25, 2021) (citing *Rivera v. United States*, 924 F.2d 948, 952-54 (9th Cir. 1991) (the CSRA and the Whistleblower Protection Act "[provide] the exclusive remedy for whistleblowing claims brought by federal employees against their employers") The Plaintiff first took his complaint to the EEOC, which was the proper mechanism to achieve relief as a federal employee. After, receiving an unfavorable verdict from the EEOC, he is now exhausting his legal methods for relief. The Defendant uses *Mangano v United States* as their controlling authority but we urge the Court to hold that case distinguishable to the present issue. In *Mangano* the Plaintiff was hired under as a part time employee and there is no reference to whether he was in his probationary period. *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) In our case, Mr. Baskhi was in his probationary period of hire as a full time employee and therefore was in a different classification of employment than the plaintiff in *Mangano*. *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) Therefore, the Plaintiff respectfully requests that the Court reject the Defendant's motion to dismiss under the grounds that his claim is preempted by the CSRA.

**B. Plaintiff's Hostile Work Environment Claim satisfies Fed. R. Civil Procedure 12(b)(6).**

The Defendant states that the Plaintiff has failed to provide sufficient detail regarding the actual conduct he claims is discriminatory or harassing. According to the facts stated in the third amended complaint, it is clear that the harassment the Plaintiff experienced was sufficient enough to warrant a hostile work environment.

In *Harris v Forklift Systems* the Supreme Court has stated that in order for conduct to amount to workplace harassment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993) (see also *Brooks v City of San Mateo*, 229 F.3d 917 (2000); *Reynolds v County of San Diego*, 858 F.Supp.1064 (1994)) The Court spells out a test in

which the harassment might be measured which includes looking at the "totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. (see also *Swinton v Potomac Corp.*, 270 F.3d 794 (2001); *Chuang v University Davis, Board of Trustees*, 225 F.3d. 1115 (1997); *Lam v University of Hawai'i,* 40 F.3d 1551 (1998); *McGinest v GTE Service Corp,* 360 F.3d 1103 (2004); *Dawson v Entek Internationl,* 630 F.3d 928 (2011))

Though the Plaintiff was only employed by the Defendant for five months, he was subjected to ongoing harsh harassment due to his race and ethnicity by his superiors and multiple illegal demands to engage in Asdourian's personal business enough to make him severely emotionally and physically paralyzed. [Refer to TAC for specific racially motivated instances and comments] The Defendant's actions in totality meet the requirement of being severe and pervasive enough because the Plaintiff, during his probationary period was immediately cast out because of his race, age, and ethnicity in ongoing hostile work environment. The Defendant's actions meet the frequency requirement because in the span of 5 months, the Plaintiff was subject to numerous and daily interactions where his race or ethnicity was brought into the hostile work environment, forcing the Plaintiff's mental and physical health to deteriorate causing severe mental and physical health issues. The Defendant might argue that their actions muster to just a mere offensive utterance, but the Plaintiff argues that because of the consistency of the remarks, this element is met as well. Additionally, after submitting a complaint with the Office of Inspector General about Asdourian's behavior, it was stated that on page 14 of the report that it was clear that "…Mr. Asdourian [redacted] and Mr. Bakshi violated the Department of Commerce Ethics Policy, Mr.Asdourian [redacted] however, are held to a higher standard and it is critically important for them to set a good example." OIG Referral 22-0083-H It is clear from the OIG report that the Defendant is liable for the Plaintiff's termination and mental and physical deterioration and there was fault on behalf of the Defendant's employee, Mr. Asdourian.

The Defendant relies on the Supreme Court's opinion in *Faragher v City of Boca Raton* to dismiss Mr. Bakshi's claim however we ask this Court deny this dismissal. In *Faragher* the

Supreme Court stated that rather than looking at the isolated comments, the Court should examine the "totality of the circumstances" when analyzing whether the discrimination was pervasive enough to effect one's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) In Plaintiff's TAC, there is evidence of the discriminatory culture and ongoing daily harsh workplace harassment and discrimination that Asdourian had created in workplace, which not only effected Mr. Bakshi but multiple of his employees in the same office, that permeated into Microsoft Team's chats and between personal conversations with Mr.Bakshi and Asdourian. [Exhibit __ in TAC] For these reasons, we ask this Court to deny the Defendant's motion to dismiss.

## V. PRAYER FOR RELIEF

For the reasons stated herein, the Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss and grant a jury trial in order to give the Plaintiff his due process right to show evidence of the harsh ongoing workplace harassment and discrimination, whistleblower retaliation which is a protection that is protected by the United States, and hostile work environment that he was subjected to. The Plaintiff also respectfully and humbly asks this court to provide himself the opportunity to return to furthering his dream of being an ethical and outstanding government employee.

Dated: April 8, 2024

Respectfully submitted,

Arjun Bakshi

Plaintiff in Pro se