**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ARJUN BAKSHI,

Plaintiff,

v.

GINA RAIMONDA, SECRETARY U.S. DEPARTMENT OF COMMERCE,

Defendant.

Case No. 8:22-CV-2170-MRA-DFM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [ECF 50]**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint. ECF 50. The Court read and considered the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. The hearing was therefore vacated and removed from the Court's calendar. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

//

//

//

//

//

# I. BACKGROUND[1]

## A. Factual Allegations

Plaintiff Arjun Bakshi ("Plaintiff"), proceeding *pro se*, filed this action against the United States Secretary of Commerce for wrongful termination, violation of whistleblower protections, and other violations arising out of Plaintiff's employment with the United States Department of Commerce ("DOC"). ECF 1. On April 12, 2021, the DOC hired Plaintiff as an International Trade Specialist. ECF 46 (TAC) at 4 ¶ 12. Plaintiff reported directly to DOC Chicago Director Hovan Asdourian ("Asdourian"). *Id.* Plaintiff alleges that Asdourian repeatedly harassed him and created a hostile work environment during Plaintiff's probationary employment period. *Id.* at 6-7 ¶¶ 17, 18, 24.

On January 7, 2021, before Plaintiff began his employment, Asdourian initiated a video conference call with Plaintiff and no other DOC employees present, which he claims violated DOC guidelines. *Id.* at 3 ¶ 10. In that call, when referring to Plaintiff's impending move to Chicago, Asdourian stated that "you can eat curry[,] there are plenty of your kind in Chicago," and that "there are too many Mexicans and Blacks there." *Id.* at 4 ¶ 10.

In June 2021, after Plaintiff began his employment, Asdourian asked Plaintiff to carry out tasks for Asdourian's personal business during the COVID pandemic. *Id.* at 6 ¶ 16. Specifically, on June 23, 2021, Asdourian told Plaintiff to meet his son, Ross, in Los Angeles to provide Ross with masks and socks. *Id.* Between June 23 and 25, 2021, Asdourian made an "intimidating phone call" to Plaintiff, in which he directed Plaintiff to

---

[1] The factual background is described herein as alleged in Plaintiff's Third Amended Complaint ("TAC"). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to presume that all well-pleaded factual allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, in deciding a facial challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

"[m]ake sure you take care of Ross," and told him to "[d]o whatever he tells you to do." *Id.* ¶ 15. It is unclear from the TOC when this occurred, but Plaintiff alleges he delivered the shipment of masks and socks "out of fear of retaliation from [] Asdourian" even though the trip was not work-related. *Id.* ¶¶ 16-17. On June 25, 2021, in response to a message updating Asdourian on a work-related matter, Asdourian requested Plaintiff's personal contact information to make an "e-introduction" to Ross. *Id.* at 6-7 ¶ 18. Later, Asdourian told Plaintiff to give his son a $700,000 credit for securing the sale of 200,000 boxes of masks and socks, which Plaintiff refused, because this request was a violation of agency policies and rules. *Id.* ¶ 16. On August 19, 2021, during working hours, Asdourian asked Plaintiff about a tracking number and "if the masks were mailed to the right address," and that he wanted "only mask [*sic*] and sock." *Id.* at 7 ¶ 21, 22. On August 20, 2021, Asdourian ignored an update from Plaintiff about his Agency work, and again asked if his masks were mailed. *Id.* ¶ 23.

After Plaintiff refused to partake in Asdourian's personal business, Plaintiff received two letters alleging a decline in the value of his work. *Id.* at 8 ¶ 26. The TAC does not state when these letters were received. Plaintiff was never provided clarification on why he received the letters. *Id.* Before Plaintiff refused to participate in Asdourian's personal business, Plaintiff had not received any negative work performance reviews or been notified about poor performance. *Id.* ¶ 25. Asdourian sent Plaintiff a critical email regarding a practice presentation that Plaintiff had given to Asdourian; the TAC alleges that the email was "part of a plan to discredit Plaintiff after [he] refused to engage in illegal activities contrary to agency policy." *Id.* at 8-9 ¶ 26. In addition, Plaintiff alleges that Asdourian deliberately did not sign Plaintiff's performance review at the end of the fiscal year, because Plaintiff would have met all performance metrics and there were no complaints about Plaintiff's performance. *Id.* at 16 ¶ 64.

The TAC further alleges that, throughout Plaintiff's time at the DOC, Asdourian made a series of hostile statements to Plaintiff. On August 16, 2021, in response to a resource that Plaintiff shared in a work group chat, Asdourian wrote: "you will be dead by

then," and "you are to [*sic*] old." *Id.* at 7 ¶ 20. On an ongoing basis, Asdourian made statements about Plaintiff's race, such as: "all Indians are slaves," "you all smell like curry," *id.* at 11 ¶ 40, "what[']s up with the stupid dot on your forehead," *id.* at 15 ¶ 58, "Indians sell fake things," *id.* at 13 ¶ 51, and "when you take Ross [Asdourian's son] out, you will feel at home with your smelly curry food," *id.* at 13 ¶ 51. The TAC alleges several more derogatory racial statements. *See, e.g., id.* at 18 ¶ 7, 19 ¶ 9.

On September 13, 2021, and September 16, 2021, Plaintiff reached out to Shannon Lacy in Human Resources ("HR") to file a complaint against Asdourian for his hostile comments and his orders regarding his personal business. *Id.* at 9 ¶ 27. Plaintiff never received a response from HR. *Id.* On September 24, 2021, shortly after Plaintiff refused a request from Asdourian's son for more shipments of masks, *id.* at 9 ¶ 28, Plaintiff was terminated from his position. *Id.* at 8 ¶ 24. Plaintiff subsequently filed a complaint with the DOC alleging "actions of discrimination constituting a hostile work environment." *Id.* at 3 ¶ 9; ECF 50-1 (Department of Commerce Notice of Final Order) at 4. After the completion of the DOC investigation, Plaintiff requested a hearing before an Equal Employment Opportunity Commission ("EEOC") administrative judge. ECF 50-1 at 4. On September 6, 2022, the administrative judge issued a Decision Without a Hearing in favor of the Agency. *Id.* at 5. The DOC then adopted the administrative judge's decision and issued a Notice of Final Order on October 17, 2022.[2] *Id.*; *see also* 29 C.F.R.

---

[2] Defendant requests that the Court take judicial notice of the Notice of Final Order in Plaintiff's case. ECF 50-1. The Court may take judicial notice of matters in the public record. *See, e.g.*, *Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (holding that a court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts") (internal citation omitted). A judicially noticed fact must be one "not subject to reasonable dispute[.]" Fed. R. Evid. 201(b). The Court takes judicial notice of DOC's Final Order because Plaintiff refers to the Order in the TAC, ECF 46 ¶¶ 3, 30, and does not oppose the request. ECF 50-1. For the same reasons, the Court also finds this document incorporated by reference into Plaintiff's TAC. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (in ruling on a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the

§ 1614.110(a). The Order gave Plaintiff the right to appeal the final action to a federal district court. ECF 50-1 at 7-9.

### B. Procedural History

On December 1, 2022, Plaintiff filed this lawsuit. ECF 1. On September 14, 2023, Defendant moved to dismiss Plaintiff's initial Complaint. ECF 26. The Court granted the unopposed motion. ECF 28. On October 17, 2023, the parties jointly stipulated to allow Plaintiff to file an amended complaint, ECF 29, which the Court approved, ECF 30. On November 21, 2023, Plaintiff filed his First Amended Complaint. ECF 34. On December 13, 2023, Plaintiff was allowed to file a Second Amended Complaint. ECF 36, 37. Defendant filed a Motion to Dismiss, ECF 39, which the Court denied as moot after allowing Plaintiff to file a Third Amended Complaint ("TAC"), ECF 42.

This case was reassigned to the undersigned judge shortly before Plaintiff filed his TAC on March 7, 2024. ECF 44, 46. The TAC raises claims of (1) wrongful termination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2302); (2) hostile work environment under Title VII (42 U.S.C. §§ 2000e *et seq.*); (3) violation of the Whistleblower Protection Act (5 U.S.C. § 2302); and (4) whistleblower retaliation. *Id.* Defendant moves to dismiss the TAC based on lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). ECF 50 at 6. Plaintiff opposes the Motion. ECF 51.

## II. <u>LEGAL STANDARDS</u>

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing [jurisdictional] elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Since jurisdictional elements are "not mere pleading

---

complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

A motion to dismiss pursuant to Rule 12(b)(1) can either be a "facial" or "factual" challenge to jurisdiction. *See Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, defendant brings a "facial" attack to jurisdiction, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Where the Rule 12(b)(1) challenge is facial in nature, the court must accept the allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Superior Court of Los Angeles Cnty.*, 91 F.4th 977 (9th Cir. 2024); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

**B. Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all of the allegations contained in a complaint," but is "not bound

to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* pleading shall be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). The court has an obligation to afford the *pro se* complainant "the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

## III. DISCUSSION

### A. Wrongful Termination, Whistleblower, and Retaliation Claims (Claims 1, 3, and 4)

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's wrongful termination, whistleblower protection, and whistleblower retaliation claims because these claims are preempted by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 2302. ECF 50 at 7. Plaintiff argues that the CSRA does not apply to probationary employees like him. ECF 51 at 6.

The CSRA established a "remedial scheme through which federal employees can challenge their supervisors' 'prohibited personnel practices.'" *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008). It includes a comprehensive framework for evaluating adverse personnel decisions, establishes standards for review of such actions by the Merit Systems Protection Board ("MSPB"), and provides for judicial review of MSPB decisions in the U.S. Court of Federal Claims or in the regional federal courts of appeal. *Lindahl v. OPM*, 470 U.S. 768, 774 (1985). "The CSRA's remedial scheme is both exclusive and preemptive." *Mangano*, 529 F.3d at 1246 (internal quotation omitted). It is "designed to 'balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration' and wholly occupy the regulatory field." *Chamat v. Paulson*, No. 07-CV-1010 W(JMA), 2009 WL 764989, at *4 (S.D. Cal.

Mar. 23, 2009) (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). Accordingly, "[i]f the challenged conduct falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are [the employee's] *only* remedy." *Mangano*, 529 F.3d at 1246 (emphasis added) (explaining that "a federal employee's personnel-related complaints are preempted 'even if no remedy [is] available . . . under the CSRA'") (quoting *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999)).

Prohibited personnel practices under the CSRA include "disciplinary or corrective action," "a detail, transfer, or reassignment[,]" a "decision concerning pay, benefits, or awards," or "any other significant change in duties, responsibilities, or working conditions[.]" 5 U.S.C. §§ 2302(a)(2)(A)(iii), (iv), (ix), (xii). The CSRA explicitly covers wrongful termination and whistleblower claims. *See Munoz v. Locke*, 634 F. App'x 166, 167 (9th Cir. 2015) ("The Civil Service Reform Act [] provides the exclusive administrative remedies for [wrongful termination] claims."); *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2022) ("Under no circumstances does the [Whistleblower Protection Act] grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."); and *Mangano*, 529 F.3d 1243 (explaining that whistleblower retaliation is enumerated in the CSRA, 5 U.S.C. § 2302(b)(8)(A), as a "prohibited personnel practice").

Plaintiff contends that he was terminated without reason after he refused to be part of Asdourian's personal business, which amounts to a "prohibited personnel action" under the CSRA. ECF 51 at 6 (citing 5 U.S.C. § 2302(b)(8); *Kerr v. Jewell*, 836 F.3d 1048, 1049 (9th Cir. 2016); *Thomas v. Sec'y of the United States Dep't of Veterans Affs.*, 2021 WL 3468937, at *2 (C.D. Cal. Mar. 25, 2021); *Rivera v. United States*, 924 F.2d 948, 952-54 (9th Cir. 1991)). Yet Plaintiff argues that the CSRA does not preempt *his* claims because the CSRA does not apply to probationary employees. ECF 51 at 6.

Plaintiff is incorrect, because "the CSRA regime does in fact provide a remedy to probationary employees." *Toro v. Napolitano*, No. 12-CV-2804-IEG (WVG), 2013 WL 4102158, *2 (S.D. Cal. Aug. 13, 2013) (citing 5 U.S.C. § 1214). A probationary employee

can petition the Office of Special Counsel to appeal employment grievances. *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989) ("[P]robationary employees may submit a complaint to the Special Counsel of the Board regarding 'prohibited personnel practices[.]'"). If, upon investigation, the Special Counsel finds that reasonable grounds exist to believe the prohibited practice occurred, it reports its findings or recommendations to the agency involved, the MSPB, and the Office of Personnel Management. 5 U.S.C. § 1214(a)(1)(A), § 1214(b)(2)(B). If the agency does not take action, the Special Counsel may then petition the MSPB for corrective action. *Id.* § 1214(b)(2)(C). Thus, based on "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012), there is no support for Plaintiff's position that his wrongful termination and whistleblower claims (claims 1, 3, and 4) are not preempted by the CSRA. *See Kotarski*, 866 F.3d at 312 ("Because Congress provided some mechanism [to probationary employees] for appealing adverse personnel actions, it cannot be said that the failure to provide damages, or complete relief, was 'inadvertent.'"); *see also Mangano*, 529 F.3d at 1246 ("[W]here Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted.").

Accordingly, these claims are DISMISSED with prejudice for lack of subject matter jurisdiction.

**B. Hostile Work Environment (Claim 2)**

"Before a federal civil servant can sue his employer in court for discriminating against him in violation of Title VII, he must first exhaust his administrative remedies." *Green v. Brennan*, 578 U.S. 547, 552 (2016); *see EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). Plaintiff exhausted his administrative remedies, but Defendant argues that the TAC fails to state a plausible claim for hostile work environment.

To establish a hostile work environment claim under Title VII, a plaintiff must allege that (1) he was "subjected to verbal or physical conduct" because of his national origin or race; (2) "this conduct was unwelcome"; and (3) the "conduct was sufficiently severe or

pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Kang v. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003). Defendant argues that the TAC identifies only three specific comments that Asdourian made that created a hostile work environment and does not show how the alleged harassment was severe or frequent. ECF 50 at 9 (citing ECF 46 at 13 ¶ 51, 14 ¶ 54).

To satisfy the first element, "[g]enerally, a plaintiff alleging racial or national origin harassment would present facts showing that he was subjected to racial epithets in the workplace." *Kang*, 296 F.3d at 817. Plaintiff has clearly done so here. The TAC includes several allegations of hostile comments made by Asdourian to Plaintiff related to his national origin. *See, e.g.,* ECF 46 at 13 ¶ 51 ("Indians are all slaves"), *id.* ("Indians sell fake things"); *id.* ("when you take Ross [Asdourian's son] out, you will feel at home with your smelly curry food"); *id.* at 18 ¶ 5 ("Does your family wear . . . on their forehead")[3]; *id.* at 18 ¶ 7 ("Indians are pieces of . . . "). The TAC also indicates that these comments were unwelcome, satisfying the second element of a hostile work environment claim. ECF 46 at 9 ¶ 27; 19 ¶ 9.

To satisfy the third element, "[a] plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). "To determine whether an environment is sufficiently hostile, [courts] look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "Repeated derogatory or humiliating statements . . . can constitute a hostile work environment." *Id.*

[3] The Court has chosen to omit profane language attributed to Asdourian and included in the TAC. The Court instead includes ellipses in quoting this language and cites to the TAC where the full quotations can be found.

Defendant maintains that, in alleging the hostile work environment claim, the TAC alleges only three hostile comments, ECF 46 at 13 ¶ 51, but that is not accurate. In its entirety, the TAC identifies no fewer than eight racially hostile statements directed at Plaintiff during the course of his five-month employment (from April 2021 to September 2021). *See* ECF 46 ¶¶ 20, 40, 51, 58; *Id.* at 19 ¶ 9, 18 ¶ 7. The TAC also alleges that Asdourian made "racially motivated remarks on a daily basis." *Id.* at 14 ¶ 52. Some of these alleged statements, including statements referring to Indians as "slaves," *id.* at 11 ¶ 40, asking Plaintiff "what[']s up with the stupid dot on your forehead," *id.* at 15 ¶ 58, and threatening "to stick a steak down [Plaintiff's] throat" and do even worse things because he is vegetarian like many other Indians, were physically threatening, humiliating, and severe. *See* ECF 46 ¶¶ 20, 40, 51, 58; *Id.* at 19 ¶ 9, 18 ¶ 7. The TAC further alleges that the racially hostile comments were "brought up on such a regular and recurring basis that it had a substantial pervasive impact on the ability of the Plaintiff to regularly perform and fulfill [his] duties of employment[.]"[4] *Id.*

---

[4] "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002 (quoting *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989). Courts are required to construe appellants' EEOC charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)) (internal quotations omitted). Therefore, courts will consider a plaintiff's claims to be "reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case, as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful." *Id.* (internal citations and quotations omitted). Plaintiff's allegations about Asdourian's discriminatory conduct fall within "the scope of the EEOC investigation which can reasonably be expected to [have] grow[n] out of [Plaintiff's] charge of discrimination." *Green*, 883 F.2d at 1476 (quoting *Kaplan v. Int'l All. of Theatrical and Stage Emp. And Motion Picture Mach. Operators*, 525 F.2d 1354, 1359 (9th Cir. 1975), *abrogated on other grounds by Laughon v. Int'l All. of Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001)).

These were not, as Defendant argues, simple teasing, offhand comments, or isolated incidents. *See Faragher*, 524 U.S. at 788 (finding such actions will not amount to discriminatory changes in the terms and conditions of employment unless extremely serious); *see also Alvarado v. Colvin*, No. CV12-10010 AJW, 2016 WL 370681, at *8 (C.D. Cal. Jan. 28, 2016) (finding that a "[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII") (quoting *Faragher*, 524 U.S. at 787). The hostile comments made by Asdourian were more severe and frequent than the statements made in the cases cited by Defendant. *See, e.g., Manatt*, 339 F.3d 792 (finding coworkers' "simple teasing" and "offhand comments" were "non-actionable discrimination," and two more severe incidents of racially offensive statements and gestures over the course of two and a half years of employment did not "alter the conditions of [plaintiff's] employment"); *Kortan v. California Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) (holding that a co-worker's comments to plaintiff "mainly made in a flurry" in a single day, and where that co-worker had only once or twice previously made offensive comments, did not evidence a hostile work environment); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2004) (holding that two racially derogatory statements made "more than six months apart" did not constitute a hostile work environment). The allegations in the TAC are more akin to those alleged in *Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001), in which the Ninth Circuit found that an employee "sustained [a] campaign of taunts" occurring at least once a week and often several times a day "designed to humiliate and anger him," thereby creating a hostile work environment. *Id.* at 873.

Based on the nature of Asdourian's hostile comments made to Plaintiff, together with their frequency over the course of Plaintiff's brief employment, Plaintiff has plausibly alleged a hostile work environment claim. This claim survives dismissal.

## IV. <u>LEAVE TO AMEND</u>

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, "[t]he court should freely give leave when justice so requires." *Id.* At base, "leave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2013)).

Here, the Court finds that granting leave to amend the wrongful termination and whistleblower claims (claims 1, 3, and 4) would be futile. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). Plaintiff cannot cure the fact that his claims are preempted by the CSRA. Thus, these claims are dismissed with prejudice. Plaintiff may proceed only with his hostile work environment claim (claim 2).

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Motion is **GRANTED IN PART and DENIED IN PART.** The Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's wrongful termination, whistleblower, and whistleblower retaliation claims with prejudice. The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's hostile work environment claim.

**IT IS SO ORDERED.**

Dated: December 23, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE